## BLANCHARD v. COMMERCIAL BANK OF TACOMA.

(Circuit Court of Appeals, Ninth Circuit. June 8, 1896.)

### No. 217.

1. EVIDENCE—BOOKS INTRODUCED BY OPPOSITE PARTY.

When the books of a bank are offered in evidence by one party to a suit, the other party is entitled to avail himself of any part of the evidence contained therein, such as the state of a particular account.

2. SAME—BANK BOOKS—EXPERT EVIDENCE.

In an action to recover a sum alleged to have been loaned to a bank, the receiver thereof claimed that the loan was to the president of the bank personally. He also contended that the bank's books should not be considered as evidence that the loan was to the bank, because they were not properly kept, and he offered to show by expert testimony what would have been the proper method of entering the transaction if the loan had been made to the bank. *Held*, that this evidence was properly excluded, as it did not appear that there was any such ambiguity in the account as to require expert evidence in relation thereto.

3. REVIEW ON ERROR—SPECIAL FINDINGS.

Where a jury is waived, and the court makes special and general findings, an appellate court is not required to weigh the evidence and determine the preponderance thereof, but will only consider whether the pleadings and special findings are adequate to support the judgment. Walker v. Miller, 8 C. C. A. 331, 59 Fed. 870, followed.

4. BANKS AND BANKING — MONEY BORROWED FOR BANK BY PRESIDENT — LIABILITY OF RECEIVER.

The receiver of an insolvent national bank is liable for money borrowed by the president of the bank without special authority, when it appears that the bank actually received the money and appropriated it to its own use. Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, distinguished.

In Error to the Circuit Court of the United States for the District of Washington, Northern Division.

This cause was tried before the court without a jury. The findings of fact are as follows: "(1) That the plaintiff, the Commercial Bank of Tacoma, is, and at all times in the complaint herein mentioned was, a corporation duly organized and doing business under and by virtue of the laws of the state of Washington, and engaged in a general banking business in the city of Tacoma, state of Washington, and that the said plaintiff is, and at all times mentioned in the plaintiff's complaint has been, a resident of the state of Washington. (2) That the First National Bank of Whatcom at all times mentioned in the complaint was, and now is, a national banking association, incorporated, organized, and existing under and by virtue of the laws of the United States of America relating to national banks, having its banking house and office, and doing business as a national bank, in the city of New Whatcom, state and district of Washington. (3) That on the 22d day of June, 1893, the said First National Bank of Whatcom became and was, and still is, insolvent; that thereafter such proceedings were duly and legally had and taken that on, to wit, the 27th day of June, 1893, the defendant, George B. Blanchard, was duly and legally appointed receiver of the said First National Bank of Whatcom, and thereafter duly qualified as such, and entered upon the discharge of his duties as such, and ever since has been, and now is, the duly and legally appointed, qualified, and acting receiver of the said First National Bank of Whatcom; that, as such receiver of said bank, the said George B. Blanchard at all times mentioned in the plaintiff's complaint has been, and is, entitled and subject to be sued, as such receiver, in this court. (4) That on or about the ———th day of February, 1892, in the city of Tacoma, Washington, while the said First National Bank of Whatcom was engaged in its banking business, the plaintiff loaned to the said First

National Bank of Whatcom, at its special instance and request, the sum of ten thousand dollars ($10,000), and the said sum of ten thousand dollars ($10,000) was paid by the plaintiff to the said First National Bank of Whatcom for the use and benefit of the said First National Bank of Whatcom, and said bank received the said money for its own use and benefit, and said money was deposited by the plaintiff in its bank, to the credit of the said First National Bank of Whatcom, and the same and other credits of the said First National Bank of Whatcom were thereafter by it, at various times and in various amounts, drawn out upon checks made in the ordinary course of its business, and were used and appropriated by it to its own use and benefit; that at the time of the said loan the said First National Bank of Whatcom then and there agreed and promised to repay to the plaintiff, four (4) months after said date, the sum of ten thousand (10,000) dollars, with interest at the rate of ten per cent. per annum from the date of receiving the same, to wit, from the 4th day of February, 1892. (5) That no part of the said sum of ten thousand dollars ($10,000) so loaned has been paid, except the interest thereon to the 4th day of February, 1893; that the negotiations for said loan were conducted upon the part of the said First National Bank of Whatcom by one C. M. Atkins, who, at the time of negotiating the said loan, was the duly and legally qualified and acting president of the said First National Bank of Whatcom, and at the time of making the said loan, to wit, on the 4th day of February, 1892, was its duly elected, qualified, and acting cashier. (6) That on the 5th day of October, 1893, the plaintiff duly presented and filed with George B. Blanchard, as receiver aforesaid, its claim for the sum of ten thousand dollars ($10,000), with interest thereon at the rate of 10 per cent. per annum, in accordance with the terms of said loan, which said claim was duly verified by A. Bridgman, he then being the cashier of the Commercial Bank of Tacoma; that the said claim stated that the sum of ten thousand dollars ($10,000), with interest as aforesaid, was due and payable to the Commercial Bank of Tacoma alone; that the said Commercial Bank of Tacoma had given no indorsements or assignments of the same, or any part thereof; and that there were no offsets or legal or equitable defenses thereto; that the receiver rejected the said claim, and refused to pay the same." And as a conclusion of law the court found "(1) that the plaintiff, the Commercial Bank of Tacoma, is entitled to judgment against George B. Blanchard, as receiver of the First National Bank of Whatcom, for the sum of ten thousand dollars ($10,000), with interest thereon at the rate of ten per cent. per annum from the 4th day of February, 1893, up to and including the 22d day of June, 1893, amounting altogether to the sum of $10,383.00, and for its costs and disbursements in this action expended, taxed at $———, and that the said George B. Blanchard, as such receiver, pay to the plaintiff, out of the assets of said bank in his hands, such dividends upon such judgment as may be declared upon the liabilities and obligations of said bank generally." There are 14 assignments of error, which may be summarized as follows: (1) The court erred in refusing to grant a continuance of the trial on account of the absence of the witness Atkins; (2) in excluding exhibits 19, 20, and 21, offered in evidence by the defense; (3) in admitting evidence of the state of Atkins' account with the Whatcom bank when the loan in question was made; (4) in excluding expert testimony as to what would have been the proper method of entering the transaction in question in the Whatcom bank books if the loan had been made to that bank; (5) in excluding the corporate minute book of the Whatcom bank, offered in evidence to prove that Atkins had not been authorized to obtain for the bank the loan in question; (7) in refusing to grant a nonsuit, and in holding the Whatcom bank liable as set forth in the fourth finding of fact and its conclusion of law thereon.

Burke, Shepard & Wood, for plaintiff in error.

Kerr & McCord and Carr & Preston, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts as above). 1. The first assignment of error is without merit. The record shows

that the witness Atkins had been introduced by the defendant; that his direct examination had been concluded, and that he had been turned over to the plaintiff for cross-examination; that upon his failure to appear for cross-examination the plaintiff, in open court, waived the right to cross-examine him, and insisted that the trial should proceed; that thereupon the defendant applied for a continuance on account of the absence of the witness Atkins, whose testimony had not been completed at the former hearing, and who had in his possession, and would produce when present, among other written evidence, a receipt from the Commercial Bank of Tacoma to the First National Bank of Whatcom to this effect: "We acknowledge receipt [date] of the items credited below [in the left-hand one of two columns], deposited by C. M. Atkins [in column to right], $10,000." The court then announced that it would grant the continuance unless the plaintiff would admit that the witness Atkins, if present, would produce and identify the receipt. The plaintiff then agreed that said receipt might at any time be offered in evidence and admitted. The trial then proceeded, and no objection was then made; nor was any exception taken to the action of the court in proceeding with the trial.

2. The court did not err in excluding defendant's Exhibits 19, 20, and 21. It appears from the record that Exhibit 19 was found by the plaintiff among the Whatcom bank papers, and is claimed by the defendant to be a statement of account between the Chase National Bank of New York, and the First National Bank of Whatcom, for January, 1892. Exhibit 20 related to transactions between the New York bank and the Whatcom bank in February, 1892; and Exhibit 21 was a canceled draft drawn by the Whatcom bank upon the Chase National Bank for the sum of $5,000, in favor of Samuel Collier, dated February 9, 1892. Neither of these exhibits appears to have been identified, and they were excluded by the court upon that ground, as well as for the reason that it was not shown that these matters were in any manner connected with the transaction involved in this case. There is evidently some mistake about these exhibits. We are unable to find Exhibits 19 and 20 in the record, but we do find the following stipulation, which is not referred to in the briefs of counsel:

"It is hereby stipulated between the parties to this case that those exhibits received and offered in evidence upon the trial herein which were marked, respectively, as * * * 'Defendant's Exhibits * * * 19, 20, 21,' * * * and each thereof, did not and do not contain any evidence, facts, or matters material to this cause or the issue therein, or to the course of the trial therein, or to any exceptions in the course thereof, or to the decision of this court therein, or to any exception taken to any part of said decision, nor material or necessary to a full review of the said decision on appeal."

We accept this stipulation as containing the truth in regard to said exhibits.

3. The state of Atkins' account with the Whatcom bank when the loan in question was made was not irrelevant to the issues raised in the case. The contention of plaintiff was that the Whatcom bank used the money as a loan to it. The contention of the defendant was that the money was paid to the Whatcom bank by

Atkins, and that the loan was made to Atkins personally. The account between Atkins and the bank tended to shed some light upon the character of the transaction, and was admissible in evidence. The account in question was contained in the books of the bank, which were offered in evidence by the defendant; and it is not, therefore, in a position to complain of the ruling of the court. The plaintiff had the right to avail itself of any part of the evidence offered by the defendant.

4. It is claimed that the court erred in refusing to allow Mr. Blanchard, as an expert witness, to answer the following question asked by defendant's counsel:

"Q. Mr. Blanchard, supposing that the transaction as to this borrowing of ten thousand dollars was, as the plaintiff in this case claims that it was, a loan for which the bank was obligated, what would have been the proper method of entering it in the account books and other records of the First National Bank of Whatcom?"

This is but one of a series of questions asked this witness with a view of showing, or attempting to show, that the books and accounts of the Whatcom bank were not properly kept, and that the entries, as made therein, ought not to be considered by the court as tending to prove that the loan was not made to Atkins personally. The court allowed the defendant, not only to show everything about the account as disclosed by the books, but also every other fact in relation to the transaction between Atkins and the bank that was within the personal knowledge of the witness. The entire record shows that the court was liberal in the admission of testimony which tended to shed any light upon the true character of the transaction. The witness Blanchard did not make any of the entries in the book. From an examination of the facts disclosed by the record, we are of opinion that the court did not err in sustaining the objection to the question asked, upon the ground that the entries themselves, as made at the time, were the best evidence. It does not affirmatively appear that there was any such ambiguity in the entries as to justify the admission of any expert testimony in relation thereto, and, from the statements made by the court with reference to this question, it clearly appears that the trial judge considered himself as competent as the witness to determine the construction that should be given to the entries as made.

5. The court did not err, to the prejudice of the defendant, in excluding the minutes of the Whatcom bank when offered for the purpose of proving that Atkins had never been expressly authorized to obtain for the bank the loan in question, (1) because the plaintiff had not attempted to prove that the Whatcom bank had ever expressly authorized Atkins to make the loan for it; (2) the defendant had already proven by witnesses that there was nothing in the offered minute book to show that such authority had been expressly conferred.

6. Is there any evidence in the record to sustain the fourth finding of fact? This case having been tried before the court without a jury, and the court having found special and general findings, we are not required to weigh the evidence and determine the prepon-

derance thereof. In the national courts the law is well settled, as is clearly stated in Walker v. Miller, 8 C. C. A. 331, 59 Fed. 870—

"That the only question presented for consideration by a record like the one now in hand is whether the pleadings and the special findings of fact are adequate to support the judgment. Neither the supreme court nor the court of appeals will undertake to determine, in a case like the one at bar, whether the special findings are supported by the testimony contained in the bill of exceptions; for to do so would be simply to review the decision of the trial court on questions of fact, rather than of law. By filing a written stipulation waiving a jury, the parties to the litigation may impose upon the circuit court the duty of making a general or special finding on questions of fact, but they cannot impose upon an appellate court a like duty. The finding of the trial court, whether it be general or special, has the same conclusive effect when the record is removed by writ of error to an appellate tribunal as a similar finding by a jury; and exceptions must be saved and presented in the same manner, either by objections to the introduction or to the exclusion of testimony, or by tendering declarations of law and obtaining a ruling thereon."

It is conceded by the respective counsel that no authority was ever directly conferred upon Atkins to make the loan for the bank, and the plaintiff in error claims that no inherent power exists in the president or cashier of a national bank to pledge the credit of the bank for a loan, and that there is no evidence that the Whatcom bank received the benefit of the loan. On the other hand, the defendant in error, while conceding that no express authority was given to Atkins by the Whatcom bank to make the loan for it, claims that a review of the evidence will establish the fact that the entire business of the bank was absolutely controlled and managed by Atkins. This seems to be admitted by the counsel for the plaintiff in error, for in their brief it is stated, "Atkins, who was not only cashier, but general factotum, of the bank, dictated its methods of bookkeeping, and ran the whole concern." Again: "Atkins was the chief executive officer of the bank, and dominant in all its affairs, throughout the life of the loan. For all important purposes, he was the bank's sole mouthpiece." This being true, it is claimed by the defendant in error that where the directors of a national bank permit their managing officer to exercise, during a long period of time, such absolute authority and control over its business and assets as Atkins exercised over the business and affairs of the Whatcom bank, neither the bank nor its receiver should be permitted to claim, as against one who in good faith dealt with the officer as the bank, that the transaction was not binding upon the bank. There is doubtless much force in this suggestion, and many state authorities have so held. Wing v. Bank (Mich.) 61 N. W. 1009; Davenport v. Stone (Mich.) 62 N. W. 722, and authorities there cited. But others have qualified this ruling by confining it to cases where the bank has retained and enjoyed the proceeds of the transaction, as this would amount to a ratification of the president's or cashier's acts. Bank v. Flanders, 161 Mass. 335, 37 N. E. 307; Thomas v. Bank, 40 Neb. 501, 58 N. W. 943; People's Bank v. National Bank, 101 U. S. 181. Some of the courts, in support of these views, have proceeded upon the familiar and well-recognized principle that, where one of two innocent parties must suffer by the

wrongful act of a third, he who gave the power to do the wrong must bear the burden of the consequences. In Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, the court held that the borrowing of money by a national bank, though not illegal, is so much out of the course of ordinary and legitimate banking business as to require those making the loan to see to it that the officer or agent acting for the bank had special authority to borrow the money. It follows from that decision that, in order to sustain the fourth finding of the court in this case, there must be some evidence showing that the Whatcom bank had, with knowledge of the facts, received the benefit of the loan. The Armstrong Case is, in several respects, different from the case at bar. In that case the appellate court was not assisted by any findings or opinion of the court below, and was left to conjecture upon what grounds the court below had acted, while in this case we have both findings and opinion showing clearly the grounds upon which the court below acted. In its findings it is stated that the sum of $10,000 was paid by the plaintiff to the First National Bank of Whatcom "for the use and benefit of the said First National Bank of Whatcom, and said bank received the said money for its own use and benefit." In the course of its decision the court said:

"The books of both banks, and all the evidence in the case, show that the Whatcom bank actually received the money in this manner: The amount of ten thousand dollars was placed to the credit of the Whatcom bank, in an account opened between the two banks, and was mingled with other deposits made in the Commercial Bank to the credit of the Whatcom bank, and the whole amount credited has been paid upon checks drawn from time to time by the Whatcom bank."

There is evidence in the record to support the finding and decision of the court, and herein the case differs essentially from the Armstrong Case. There the moneys obtained by Harper, vice president of the Fidelity National Bank, were appropriated by Harper to his own use, and it did "not appear that the bank ever got a penny of the borrowed money, or any benefit or advantage whatever by reason of the transaction." The distinction in the facts justifies the conclusion of the court in this case that the Commercial Bank is entitled to recover judgment, not upon the ground that Atkins was authorized by the directors of the Whatcom bank to borrow the money, but upon the ground that it received and appropriated the same to its own use and benefit. The judgment of the circuit court is affirmed, with costs.