# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### BROWN v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. August 1, 1905.)

No. 1,136.

1. CRIMINAL LAW—EVIDENCE—PROSECUTION FOR AIDING AND ABETTING.

In a prosecution for aiding and abetting a criminal offense, the commission of the offense by the principal and his criminal intent are fundamental issues, and are provable primarily without reference to connection with the defendant or the line of evidence which may establish the further issue against him.

2. SAME—REVIEW BY APPELLATE COURT—HARMLESS ERROR.

The rule that harmless error is not ground for reversal is applicable in criminal as well as civil cases, although the question of prejudice in such cases must be resolved in conformity with the strict principles of the criminal law.

3. SAME—EVIDENCE.

In the trial of a defendant for aiding and abetting an officer of a national bank in the misapplication of bank funds by lending the same to an insolvent corporation, of which defendant was president and principal owner, evidence of the relations between defendant and such officer prior to the transaction in question is admissible, as bearing upon the question of the officer's knowledge of the financial condition of defendant and his corporation.

4. SAME—EXPERT EVIDENCE—TESTIMONY OF ACCOUNTANT.

The testimony of experts as to the general results shown by books of account which are in evidence is admissible.

5. EVIDENCE—PROOF OF INSOLVENCY—BOOKS OF ACCOUNT OF CREDITOR.

Semble, that on an issue as to the insolvency of a debtor of a bank the books of the bank are admissible as prima facie evidence of the amount of the corporation's indebtedness to it.

6. CRIMINAL LAW—PROOF OF INTENT—EVIDENCE OF OTHER LIKE OFFENSES.

On the trial of a defendant charged with aiding and abetting an officer of a national bank in the misapplication of its funds by lending the same to an insolvent corporation, of which defendant was president, evidence that such officer also lent money of the bank to other insolvent corporations is admissible, as tending to show his intention in making the loans charged which is a material issue.

142 F.—1

7. SAME—REVIEW BY APPELLATE COURT—HARMLESS ERROR.

Error in the admission of evidence under one count of an indictment does not affect a judgment on other counts charging separate and distinct offenses.

8. SAME—TRIAL—INSTRUCTIONS.

The matter of reviewing the testimony upon any or all issues in the case in the instructions, and the comment upon it in one or another phase is entirely within the discretion of the trial court, subject only to the re quirement that material and controverted questions of fact must be submitted to the jury. It is not error to refuse requests, although they correctly state the law applicable, if they are fairly covered by the charge given, nor in any event to refuse to give instructions which are not strictly applicable to the case under the evidence.

In Error to the District Court of the United States for the District of Indiana.

The plaintiff in error was convicted and sentenced for violations of section 5206, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3496], under several counts of the indictment charging him with aiding and abetting one Justus L. Brodrick, president of the bank, in the willful and unlawful misapplication of the moneys, funds, and credits of the Indiana National Bank, of Elkhart, Ind.; also under one count for aiding and abetting said Brodrick in the unlawful abstraction of certain promissory notes, the property of said bank. The indictment contained sixty-seven counts, but nine were withdrawn from the jury. Upon six counts the jury returned a verdict of acquittal, and upon the remaining counts which were submitted returned a verdict of guilty. The court arrested judgment upon 18 of the last-mentioned counts, and entered judgment upon the verdict under 34 counts; the sentence and judgment for eight years' imprisonment being upon each count "concurrent and not cumulative." Of the counts so retained and included in the judgment, 18 charge specific "misapplications of the funds of the bank to the use of the National Manufacturing Company, and 15 charge misapplications for the use of the Consolidated Paper & Bag Company. One (the 34th) charges the abstraction and conversion of notes belonging to the bank to the use of the last-mentioned corporation. In each of the counts for misapplication of funds it is charged in apt terms that the president of the bank misapplied the funds of the bank, then under his control, and feloniously converted them to the use of the corporation named; that such corporation was then insolvent, as he well knew; that the plaintiff in error feloniously aided and abetted such misapplication. The bill of exceptions states generally that "evidence was given to prove" that "every material allegation of the indictment was true," and further specifies, among other items of evidence, "that the defendant, Brown, and his wife, at the time of the transactions alleged in the indictment, owned almost all of the stock of the National Manufacturing Company"; that Brown "was the president and general manager" thereof and the "exclusive manager"; and that, while Brown "had no interest in the said Consolidated Paper Company," he was at all the times mentioned "its president and general manager" under a salary.

The assignments of error refer to rulings of the trial court in the admission of evidence, refusals to give instructions requested on behalf of the defendant, and to instructions which were given. These assignments and the record thereupon are set forth in the opinion, in so far as they are mentioned in the argument or briefs of counsel, or are deemed material.

John M. Van Fleet, for plaintiff in error.

Jesse M. La Follette, for the United States.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge. The testimony upon which the verdict and judgment rest is not preserved in the bill of exceptions, and the recitals bearing upon the various assignments of error are quite meager,

leaving much to be inferred. But the contentions on behalf of the plaintiff in error are clearly stated in the briefs, and we are satisfied that the record is sufficient for review of the assignments upon the admission of evidence in the light most favorable to the accused.

I. Exceptions for admission of testimony. The first eight assignments of error are for the reception of testimony over objections in the several instances which appear by the bill of exceptions, and in the course of examination of the witnesses mentioned, namely: (1) Witness John Krau, Jr.; (2) witness E. R. Kerstetter; (3) (4) (5) (6) witness James M. McIntosh; (7) witness D. C. Thomas; and (8) witness Noble C. Butler. The contentions of error in these rulings and refusals to instruct the jury as requested on behalf of the plaintiff in error, in reference to testimony so received, appear to be the chief reliance for reversal of the judgment.

Preliminary to the discussion of the assignments in detail, a distinguishing feature of the case at bar must be borne in mind in the twofold character of the issues. The indictment charges Brown with aiding and abetting the alleged misapplications and abstractions of bank funds by Brodrick, the president of the bank, and this charge can be established only upon proof that Brodrick committed the primary offense. Both commission and criminal intent upon the part of Brodrick are thus made the fundamental issue, and are provable primarily without reference to connection with Brown, or the line of evidence which may establish the further issue against him. The intent of Brodrick in the primary acts must be ascertained from the facts and circumstances, and the general test of the relevancy of circumstances to that end is their logical connection with the primary offense charged against Brodrick. Thus the issue thereupon is not within the general rule which would require the presence or knowledge of the accused, Brown, to make such circumstances admissible.

1. The first assignment raises objection to the testimony on the part of one Krau, a witness for the government. He was a bookkeeper in the Indiana National Bank, and stated that the president of the bank came to his house about a week after the bank closed and "had a talk with him about the books of the bank." Upon the further inquiry, "What did he say?" the record states:

"The defendant objected, because this was a conversation subsequent to the time of the closing of the bank and subsequent to his connection with the bank, and that it was hearsay and not binding upon the defendant for any purpose whatever. The court overruled the defendant's objection, to which ruling he excepted. The witness answered that Brodrick came in and wanted to know what was going on down town, and said that the bank failure was a bad one; that he guessed they found the books all right, but might criticise the notes; that he tried to do everything all right, and said to the witness that he had better not talk too much about the pass books."

It is not stated what other testimony, if any, this witness gave, nor in what connection, other than above mentioned, the testimony was called for. So that the question of its bearing rests alone on the circumstance and language of the conversation. If it were elicited on the trial of Brodrick, the admissibility in any view, as against him, would be undoubted. Under the issue as to commission of the primary offense by

Brodrick, the fact of the interview with the bookkeeper would be admissible, as above stated, as a circumstance tending to show the intent of Brodrick, however slight its weight.    But it is not so clear that the remarks of Brodrick were alike admissible by way of circumstantial evidence as res gestæ or otherwise.    The objection to the introduction appears to have rested on the special rule applied in conspiracy cases—that the acts and declarations of one conspirator in the course of the conspiracy are admissible against all, being considered as the act and declaration of all who are engaged in the common purpose—and the limitations of that rule (vide Logan v. United States, 144 U. S. 263, 300, 12 Sup. Ct. 617, 36 L. Ed. 429) to declarations made before the consummation of the offense.    It was plainly not admissible thereunder, if such rule were in any sense applicable under this indictment; nor does it appear that the testimony was tendered or received as within the meaning of that rule, nor in what view it was considered material or relevant.    If the conversation as received amounted to a confession or admission of guilt or criminal intent on the part of Brodrick, it is probable that the trial court would have stricken it out, if requested to do so, in conformity with the general doctrine in respect of such evidence, upheld in Kirby v. United States, 174 U. S. 47, 54, 56, 19 Sup. Ct. 574, 43 L. Ed. 890, and the authorities there cited.    We are satisfied, however, that neither incident nor remark bears such interpretation. The only injurious effects mentioned in the argument of counsel, are (1) that "it showed that the president of the bank" was then "trying to tamper with a witness," and (2) that his statement "that 'the bank failure was a bad one' was purely hearsay," and "very damaging to the defendant before the jury."    In reference to the suggestion of Brodrick's attempt to tamper with a witness, nothing appears in the language to justify such interpretation; and, if assumed to bear such meaning, Brown was in no sense involved in the attempt, and the testimony was harmless as to him.    The remark upon the bank failure as "a bad one" was hearsay, if considered apart from the incident of the meeting, but it is obvious from the whole record that the fact of such failure abundantly appeared by evidence not in question, so that the other suggestion is without force.    It does not appear that the language or its possible interpretation were brought to the attention of the trial court at any time after the original objection to the question; and with the other testimony establishing the commission of the primary offense by Brodrick—which must be presumed under the recitals in the bill of exceptions—it is not deemed necessary to determine whether the language referred to was admissible in any view of the issues.    If irrelevant, we are clearly of opinion that it was in no sense misleading in its tendency, and cannot be treated as harmful to the plaintiff in error.    So, upon the assumption that the testimony was erroneously received, in the absence of prejudice, that is not sufficient reason for reversal.    Mining Co. v. Taylor, 100 U. S. 37, 42, 25 L. Ed. 541; Home Insurance Co. v. Balt. Warehouse Co., 93 U. S. 527, 548, 23 L. Ed. 868; Cooper & Co. v. Coates & Co., 21 Wall. 105, 111, 22 L. Ed. 481; Waldron v. Waldron, 156 U. S. 361, 384, 15 Sup. Ct. 383, 39 L. Ed. 453.    The rule that harmless error is not reversible error is upheld as well in criminal cases

(State v. Hallett, 63 Iowa, 259, 262, 19 N. W. 206; Ritzman v. People, 110 Ill. 362, 371; Wallace v. People, 159 Ill. 446, 450, 46 N. E. 771; Fisher v. State, 1 Pennewill [Del.] 391, 41 Atl. 184), though, doubtless, the question of prejudice in such case must be resolved in conformity with the strict principles of the criminal law. Entertaining no reasonable doubt of the harmlessness of the testimony so received, the assignment of error thereupon is overruled.

2. The second assignment is for admitting "the testimony given by Edmund R. Kerstetter, in substance, that the defendant, Walter Brown, was indebted to the Elkhart National Bank, before he came to Elkhart, Ind., to live, in the sum of $1,500 upon a note executed by him and indorsed by Mr. Brodrick, which note was renewed several times until the Indiana National Bank started, when the debt was transferred to the Indiana National Bank." Both the relations existing between Brodrick and Brown in transactions with the bank and Brodrick's information upon the true financial condition of Brown and his corporations were vital elements under the issues. This testimony was plainly relevant upon either of these inquiries, however slight its weight when considered alone. The facts thus appearing as to the personal indebtedness of Brown to the bank, and Brodrick's earlier indorsements in connection with the seeming prosperity of Brown's corporation throughout the period of renewals and other circumstances, may well have tended to establish knowledge on the part of Brodrick of the actual insolvent conditions. In the brief on behalf of the plaintiff in error two of his requests for instructions—embraced in the ninth assignment of error as Nos. 52 and 68—are mentioned as based upon the testimony above mentioned and the assumed error in its consideration. Each of the requests referred to was rightly refused, under the view that the testimony was admissible.

3. The third assignment refers to the examination of the witness McIntosh, as the bank examiner in charge of the books and affairs of the Indiana National Bank, and his testimony from the books which were in evidence, that he found the indebtedness of the National Manufacturing Company to such bank to be $88,576.72. The objection to this testimony, as preserved in the bill of exceptions, was "because the witness was asked to state a conclusion and not a fact," and was followed by argumentative statements in no wise enlarging the scope of the objection. The only ground indicated is the method of proving the state of the account by calling the examiner to state the general result of his examination, and not that the books were incompetent evidence of the fact. That ground, however, is not pressed in the argument, and is untenable. The testimony of experts upon the results appearing from account books which are in evidence is generally accepted as a valuable aid in the consideration of the accounts, and to that extent relaxation of the rule as to the best evidence is uniformly approved by the authorities. 1 Greenleaf on Evidence, § 93.

In support of this assignment, however, it is contended that the account books of the bank were inadmissible for any purpose under the indictment, and were erroneously received to show the insolvency of the National Manufacturing Company when the amount of its indebted-

ness to the bank was disputed. Such ground, if otherwise tenable, was not raised by the objection stated, and is not available upon review. Burton v. Driggs, 20 Wall. 125, 133, 22 L. Ed. 299; North Chicago Street R. Co. v. St. John, 57 U. S. App. 366, 29 C. C. A. 634, 85 Fed. 806, and cases cited. The question, therefore, whether the account books of the bank were admissible for any purpose does not arise, but it may well be remarked that like evidence upon analogous issues has frequently been received with approval. See Bacon v. United States, 38 C. C. A. 37, 97 Fed. 35; Blanchard v. Commercial Bank of Tacoma, 21 C. C. A. 319, 75 Fed. 249; Culver v. Marks, 122 Ind. 554, 23 N. E. 1086, 7 L. R. A. 489, 17 Am. St. Rep. 377; Jordan v. Osgood, 109 Mass. 457, 12 Am. Rep. 731; People v. Hurst, 41 Mich. 328, 1 N. W. 1027; Mooney v. Davis, 75 Mich. 188, 42 N. W. 802, 13 Am. St. Rep. 425; Lehmann v. Rothbarth, 111 Ill. 185. As pertinently remarked by Mr. Justice Story in Nicholls v. Webb, 8 Wheat. 326, 332, 5 L. Ed. 628, "The rules of evidence are founded upon general interest and convenience," and "must from time to time admit of modifications to adapt them to the actual condition and business of men, or they would work manifest injustice." They "must expand according to the exigencies of society." If the books of the bank were not admissible as prima facie proof of indebtedness to the bank upon the issue of insolvency of one of its debtors, the means of proof would be difficult of attainment under modern business conditions and methods. When so received they were, of course, not conclusive, but open to the dispute referred to on the part of the plaintiff in error.

4. The next assignment, as stated in the brief for plaintiff in error, "raises the question whether or not evidence of other misapplications by Brodrick was admissible as against Brown to prove the intent of Brodrick." Evidence was admitted to show that like advances were made by Brodrick for the bank to the Elkhart Paper Company and other insolvent corporations not named in the indictment. The complaint, as further stated in the brief, is that other instances of like loans were received, but each was subsequently withdrawn "from the consideration of the jury, because not followed up by any proof that any of those persons or corporations were insolvent" to the knowledge of Brodrick, while the evidence relating to the Elkhart Paper Company was permitted to stand. Sufficiency of the proof is not questioned, but it is contended, in substance, that it tended to prove the commission by Brodrick of other crimes not charged, and was thus irrelevant to establish his intent in the cases charged, and that it was in no sense admissible against Brown. As before stated, the fundamental issue was whether Brodrick was guilty of the alleged primary offenses (which involved his intent), and upon such issue the admissibility of evidence is governed by the rules generally applicable to proving intent, except that confessions or declarations by the primary offender may not be competent. The test, therefore, to be applied to the evidence of misapplication of other bank funds in favor of other insolvent corporations is this: Does it tend to prove the intention of Brodrick in the misapplications charged in the indictment?

While it is the well-settled general rule that proof of other distinct, independent offenses is inadmissible against one charged with a crime,

an exception to that rule is equally well settled in reference to offenses of like nature which tend to disclose a common purpose or scheme with the commission charged in the indictment. The authorities upholding the admissibility of such evidence of contemporaneous offenses to show intent are numerous. In the report of People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, an extended note collates the cases, and particular citations are not deemed necessary in this opinion. The evidence under consideration plainly comes within the exceptions to the general rule, and its reception was not erroneous. So the several requests for instructions to disregard such testimony were rightly denied.

Like view applies to the suggestions of error under the fifth and sixth assignments. Moreover, the testimony relates alone to counts on which the plaintiff in error was acquitted; and no meritorious question arises thereupon in any aspect.

5. The seventh assignment is without merit, either in reference to the means of proof or the relevancy of the notes thus appearing as bank assets, and no objection is suggested which calls for discussion.

6. The concluding assignment of error on the admission of testimony (eighth) rests upon the introduction of proof "that the National Manufacturing Company was adjudged bankrupt February 10, 1904." As the only issue of insolvency under the indictment was the condition of the company and knowledge thereof by Brodrick when the loans were made by the bank, it is unquestionable that this subsequent adjudication is inadequate, if not inadmissible, proof to establish insolvency at the prior dates; nor is it contended on the part of the defendant in error that it was admissible as primary evidence of the prior insolvency. It is asserted, however, that the fact of such insolvent condition at the prior times in question was "proved by other and conclusive evidence which is in no wise questioned or criticised," and the contention is substantially that the fact of subsequent adjudication in bankruptcy became admissible by way of cumulative evidence, though of slight weight. If this premise of other competent evidence to establish insolvency is justified by the record, it is unnecessary to consider the admissibility of the adjudication, as it was obviously harmless, and not reversible error in any view, under the rule heretofore stated; nor could error therein affect the judgment upon the other counts of the indictment not relating to this company. Blitz v. United States, 153 U. S. 308, 318, 14 Sup. Ct. 924, 38 L. Ed. 725; Putnam v. United States, 162 U. S. 687, 714, 16 Sup. Ct. 923, 40 L. Ed. 1118.

The bill of exceptions contains no recital of the testimony, except in certain particulars not pertinent to the present inquiry, together with the isolated portions which state the questions and answers included in the exceptions on which error is assigned. Other testimony bearing upon an issue or inquiry thus brought for review, if any were produced, is not preserved, but it is left to be inferred from general recitals. With the record so framed, the general recitals must surely receive fair construction. The bill states accordingly that "evidence was given to prove" that "every material allegation of the indictment was true." The allegations that these borrowing corporations were insolvent when the loans were made are of the utmost materiality, and presentation of this

recital in the bill fairly implies that the evidence thereupon tended to prove that fact. It is plain that the proof of subsequent bankruptcy, covered by the exception, if taken alone, did not so tend; and the special recital in reference to it in the bill of exceptions states it as a mere fragment of testimony, excluding any implication that it comprised the entire proof upon that issue. Aside from the presumption of other evidence arising from the recitals referred to, a fragment of such proof appears affirmatively in the record heretofore considered under the third assignment of error; and it is expressly stated in one of the instructions requested on behalf of the plaintiff in error—set out in the bill of exceptions as No. 31—that "much evidence has been given concerning the value of the property and the amount of the debts" of these alleged insolvent corporations. We are authorized, therefore, to presume that competent evidence was received upon the issue of insolvency, which was sufficient to support the verdict; and this, without reference to the seeming concessions of such fact in the argument on the part of the plaintiff in error.

II. Instructions refused. The only assignments remaining for consideration are the requests for instructions, 52 in number, set out in the ninth assignment. No useful purpose will be subserved by review or discussion of these requests in detail. Each has received careful examination, both separately and in reference to the instructions which were given; and we are satisfied that no reversible error intervened. The charge of the court impresses us as clearly and fairly stating the various propositions of law involved, and it is not reviewable in reference to facts not preserved in the record. Numerous features of the evidence were made the subject of comment in various requests, and were either rightly refused or sufficiently stated in the general charge; and like remark is applicable to the various propositions of law contained in the array of instructions tendered. The matter of reviewing the testimony upon any or all issues in the case, and the comment upon it in one or another phase, is entirely within the discretion of the trial court, subject only to the requirement that questions of fact which are controverted and material must be submitted to the jury for determination. While it is the duty of the court to instruct the jury upon the law of the case, it is not error to refuse to give a correct proposition in the terms of a request, if the instruction as given by the court fairly covers and includes the one so requested (Coffin v. United States, 156 U. S. 432, 456, 15 Sup. Ct. 394, 39 L. Ed. 481); and in no event is it erroneous to deny an instruction not strictly applicable to the case under the evidence (Coffin v. United States, 162 U. S. 664, 677, 16 Sup. Ct. 943, 40 L. Ed. 1109), or upon propositions not material for consideration by the jury. The law thus applicable to the case was correctly stated in the instructions, with no substantial exceptions appearing; and we are satisfied that they were comprehensive.

Other alleged errors are referred to in the argument on behalf of the plaintiff in error, both unassigned and not preserved for review, and are pressed for consideration. If either of these exceptions were assumed to be reviewable, each is without merit in our view.

Finding no reversible error in the record, the judgment of the District Court is affirmed.