## UNITED STATES v. HILLEGASS.

(District Court, E. D. Pennsylvania. January 27, 1910.)

### No. 31.

1. BANKS AND BANKING (§ 256*)—NATIONAL BANKS—OFFENSES—AIDING AND ABETTING OFFICER TO MISAPPLY FUNDS.

To authorize the conviction of a defendant of the statutory offense of aiding and abetting an officer of a national bank in the misapplication of the funds of the bank, in violation of Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), it is not necessary to aver or prove a conspiracy, nor that the principal offender had been convicted; the offenses of the principal and accessory both being misdemeanors of the same grade.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 256.*]

2. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFENSES—INDICTMENT FOR AIDING OFFICER TO MISAPPLY FUNDS.

An indictment charging that defendant knowingly, willfully, and unlawfully, with intent to injure and defraud a national bank, aided and abetted the cashier in misapplying the funds of the bank, by drawing checks on the bank when he had no funds on deposit to meet the same, which checks were paid by the cashier, charges an offense under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), and the question whether the criminal intent averred is properly inferable from the facts proved is for the jury.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 122; Dec. Dig. § 257.*]

3. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFENSES—PROSECUTION FOR AIDING OFFICER TO MISAPPLY FUNDS—EVIDENCE.

On the prosecution of a defendant, charged under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), with aiding and abetting the cashier of a national bank to misapply the funds of the bank, the misapplication of such funds by the cashier with criminal intent is a material issue, and any competent evidence relevant to such issue is admissible.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.*]

4. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFENSES—AIDING OFFICER TO MISAPPLY FUNDS.

Evidence considered, in the prosecution of a defendant under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), for aiding and abetting an officer of a national bank to misapply its funds with intent to defraud it, and held sufficient to sustain a verdict of conviction.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.*]

Criminal prosecution by the United States against De Witt C. Hillegass. On motions for new trial and in arrest of judgment. Overruled.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. Whitaker Thompson and Walter C. Douglas, Jr., for the United States.

John McClintock, Jr., and A. Florence Yerger, for defendant.

HOLLAND, District Judge. The defendant was indicted under section 5209, Rev. St. (U. S. Comp. St. 1901, p. 3497), for aiding and abetting Morris L. Hartman, the cashier of the Farmers' National Bank of Boyertown, to misapply its funds, which section, so far as material to this cause, is as follows:

"Every * * * cashier * * * or agent of any association who * * * willfully misapplies any of the moneys, funds or credits of the association * * * with intent * * * to injure or defraud the association, * * * or any individual person; * * * and every person who with like intent aids or abets any officer, clerk or agent in violation of this section, shall be deemed guilty of a misdemeanor."

There are 136 counts in the indictment, all alike in the statement of the offense charged, except that count 1 is general, charging the unlawful misapplication by means of divers checks drawn by the defendant and paid by the cashier of the bank, and counts 2 to 12, inclusive, charge similar misapplications by means of a number of checks, all drawn to the same payee by the defendant, and paid by the cashier to the persons named in the count. Counts 13 to 136, inclusive, are special counts, and identical, except as to the date, amount, and name of the payee. Count 13, which may be taken as a type of the rest is as follows:

"And the grand inquest aforesaid, inquiring as aforesaid, upon their respective oaths and affirmations as aforesaid, do further present that at all the times herein alleged the Farmers' National Bank of Boyertown, Pennsylvania, was a national banking association which had been theretofore duly incorporated, created, organized, and established under and by virtue of the acts of Congress in such case made and provided, and was then and there existing and doing a banking business at the borough of Boyertown, state of Pennsylvania, in the Eastern district of Pennsylvania, and at all the times herein alleged one Morris L. Hartman was the cashier of the said Farmers' National Bank of Boyertown, Pennsylvania. And that heretofore, to wit, upon the twenty-fourth day of May, in the year of our Lord one thousand nine hundred and six, one De Witt C. Hillegass, late of the district aforesaid, at the district aforesaid, and within the jurisdiction of this court, to wit, at the city of Philadelphia, in the state of Pennsylvania, did knowingly, willfully, fraudulently, and unlawfully, and with intent in him, the said De Witt C. Hillegass, to injure and defraud the said banking association, aid and abet the said Morris L. Hartman, being then and there cashier as aforesaid, then and there willfully to misapply certain of the moneys, funds, and credits of the said banking association for the use, benefit, and advantage of him, the said De Witt C. Hillegass, and for the use, benefit, and advantage of a person and persons other than the said banking association, the name and names of the said person and persons being to this grand inquest unknown, to wit, the sum of and of the value of forty dollars, then and there belonging to and being the property of the said banking association; that is to say, the said Morris L. Hartman heretofore, to wit, on the day and year last aforesaid, at Boyertown aforesaid, in the district and within the jurisdiction aforesaid, being then and there cashier as aforesaid, aided and abetted by the said De Witt C. Hillegass, did knowingly, unlawfully, and fraudulently, and with intent to injure and defraud the said banking association, willfully misapply certain of the moneys, funds, and credits of the said banking association, amounting to the said sum of forty dollars, in manner and by the means following, that is to say: That he, the said De Witt C. Hillegass, did then and there make, draw, and sign, and did then and there present and

cause to be presented for payment by the said banking association, a certain check then and there in printing and writing, dated the eighteenth day of May, A. D. 1906, authorizing and directing the said banking association to pay to the order of George E. Cummings the sum of forty dollars; and the said Morris L. Hartman, being then and there cashier as aforesaid, and by virtue of the official relation of the said Morris L. Hartman as cashier of the said banking association, and by virtue of the power of control, direction, and management which the said Morris L. Hartman, as cashier as aforesaid, possessed over the moneys, funds, and credits of the said banking association, did then and there pay and cause to be paid to National Bank of Pottstown, and to a person and persons to the grand inquest unknown, upon and pursuant to the direction and authorization contained in the check aforesaid made, drawn, and signed by him, the said De Witt C. Hillegass, from and out of the moneys, funds, and credits then and there belonging to and being the property of the said banking association, and without the knowledge and consent of the said banking association, its board of directors and committees. the said sum of and of the value of forty dollars, a more particular description of the said moneys, funds, and credits so paid and caused to be paid being to this grand inquest unknown, which said sum so drawn. paid, and caused to be paid as aforesaid was then and there in excess of all amounts which the said De Witt C. Hillegass was then and there lawfully entitled to draw and have paid out of the moneys, funds, and credits of the said banking association, as they, the said De Witt C. Hillegass and Morris L. Hartman, and each of them, then and there well knew; that on the said date, when the said check was paid and caused to be paid as aforesaid, he, the said De Witt C. Hillegass, then and there had no moneys, funds, and credits on deposit to his credit with the said banking association; that there was not then and there due and owing to him, the said De Witt C. Hillegass, from the said banking association any moneys, funds, and credits whatever; that the repayment of the said sum to the said banking association was not then and there in any way or manner secured, all of which they, the said De Witt C. Hillegass and Morris L. Hartman, and each of them, then and there well knew, and the said sum was then and there willfully, wrongfully, and unlawfully appropriated and converted to the use, benefit, and advantage of the said De Witt C. Hillegass, and to the use, benefit, and advantage of a person and persons other than the said banking association, the name and names of the said person and persons being to this grand inquest unknown; and the said De Witt C. Hillegass knowingly, willfully, fraudulently, and unlawfully aided and abetted the said Morris L. Hartman, cashier as aforesaid, with intent in him, the said De Witt C. Hillegass, to injure and defraud the said banking association—contrary to the form of the act of Congress in such case made and provided, and against the peace and dignity of the United States of America."

This indictment was found by the grand jury on the 11th day of March, 1909, was called for trial on September 27, 1909, and on October 15th a verdict of guilty was rendered by the jury. The reasons for which a new trial is now urged are 33 in number, the first two of which, however, are more properly questions to be considered on a motion in arrest of judgment, and, as they were filed in due time, they may be so considered in this case.

1. It is objected that the indictment does not contain an averment of conspiracy or confederacy between the defendant and an officer of the bank in violation of the section. The defendant was indicted, not for conspiracy, but for the statutory offense of aiding and abetting an officer of the bank in a misapplication of the funds. The commission of this crime may have its origin in a conspiracy or confederacy between the aider and abettor and an officer of the bank, although it is not necessary to establish such a conspiracy in order to convict of the offense charged. A conspiracy may or may not have existed at the beginning of the defendant's overdrafts, or it may have developed in

the course of his transactions in this regard before he ceased business connections with the bank; but it was not necessary to either aver or establish a conspiracy in order to convict of the offense of aiding and abetting, and in this particular the court, in the point submitted by the defendant, charged the jury much too favorably to him.

2. It is not necessary to aver that the alleged principal offender, to wit, Hartman, the cashier, had been convicted prior to the trial of Hillegass. It is a rule in common law that in felonies an accessory could not be tried before the principal; but in misdemeanors all are regarded as principals and tried as such. Congress has declared the offense with which the defendant stands charged to be a misdemeanor, and under the rule as to misdemeanors he is regarded as a principal, and can be tried either before or after the officer whom he aided and abetted in the misapplication. In the commission of the offense of the misapplication of the funds of a bank under this section, the only part an outsider can play in accomplishing the result is to aid and abet some officer of the bank who has control of the funds. The offense of the officer in misapplying the funds is of the same grade as that of the person aiding and abetting. Both are graded by the same section, and declared to be misdemeanors subject to the same penalty, and under the common-law rule all are regarded as principals, and triable either together or separately. Gallot v. United States, 87 Fed. 446, 31 C. C. A. 44; Bliss v. United States, 105 Fed. 508, 44 C. C. A. 324.

3. It is objected that the averments of the indictment, if proved to the satisfaction of the jury, would in law amount to no more than an overdraft. The averments in the indictment are that the overdrafts of Hillegass were made by him in aid of the unlawful misapplication, fraudulently, and with intent to injure and defraud the bank, so that proof of these averments would establish the defendant's guilt. The uncertainty as to whether the jury would draw the necessary inference to sustain the averments from the evidence which the government might produce was no reason why the court should sustain a demurrer or quash the indictment, and the refusal to do so is no valid reason for an arrest of judgment after the government's evidence has been submitted, and the jury, by its verdict of guilty, indicated that the evidence submitted by the government was sufficient to sustain the averments in the indictment. United States v. Heinze (C. C.) 161 Fed. 425. The other matters raised as to the sufficiency of the indictment need not be considered.

Reasons 3 to 20, inclusive, of the reasons for a new trial, are grounded upon an alleged erroneous admission or rejection of evidence; and reasons 21 to 30, both inclusive, are alleged errors committed in the charge to the jury. In the remaining 3 reasons it is urged: (1) The verdict is against the law; (2) against the evidence; (3) and against the weight of the evidence. Hillegass is charged with the offense of having aided and abetted one Morris L. Hartman, the cashier, to unlawfully misapply the funds of the Farmers' National Bank of Boyertown. Hartman became an employé of the bank in 1887, and continued with it, either as clerk or cashier, from that time to May 20, 1907, a short time before it closed. The defendant had business trans-

actions with it from the time of its incorporation, first in connection with his father, who was a director, and upon the death of the latter, which occurred on August 1, 1890, he continued his business connections with the institution. At the death of his father, Hillegass gave his notes and became personally responsible for an indebtedness to the bank of about $27,000, for which both he and his father had been responsible prior to that date. The defendant continued his connections with the bank as a borrower and depositor from that time until the time of its close, some time in July, 1907, when his total indebtedness amounted to something over $130,000. This amount was made up of "discounted notes," amounting to $75,935.97, which had been regularly passed by the board; "bond account," amounting to $22,750, some of which bonds had been accepted by the board as collateral for notes, and others taken by Hartman in substitution for overdrafts against the instructions of the board to the contrary; "overdrafts," amounting to $32,838.66, which were checks drawn upon the bank by Hillegass and paid by Hartman out of the funds of the bank; "protested paper account," which was an account in which many of the overdrafts were placed when that account became too unwieldy for the cashier to continue it in his cash drawer.

It appeared from the government's evidence that Hillegass continued to present notes for discount to the board of directors and matters were regularly conducted until September, 1905, at which time his "discounted notes" had increased very materially, and at that time the "overdrafts" began to appear. The board of directors were unaware of any indebtedness of the defendant to the bank, other than what he owed upon his "discounted notes." Without the knowledge of the board, Hartman had permitted Hillegass to overdraw his account, so that on or about March 28, 1906, his overdrafts amounted to $24,000, $11,000 of which Hartman placed in the statement book under the head of "protested paper account," and it was through this entry that the president of the bank became aware of the overdrafts, as a result of which Hillegass and Hartman were called before the board, and on April 10, 1906, a settlement was had, and the board was left under the impression that the whole of the overdrafts had been provided for. On the latter date Hillegass presented ten $1,000 absolutely worthless Carrolton Coal Company bonds as collateral security for $10,000 of his notes, and an additional amount, making a total of $10,800, which was substituted for the protested paper account, and the board was informed by Hartman in the presence of the defendant that this amount was the total of Hillegass' overdrafts, when at the same time there was an overdraft, of which the board was not informed, amounting to about $13,000. This settlement was to go into effect on April 18, 1906, and, notwithstanding the fact that the board had given positive directions to both the cashier and the defendant at the board meeting on April 10th that no further overdraft would be permitted or the acceptance of any securities allowed without the approval of the board, Hartman permitted Hillegass to increase his overdrafts to the amount of over $6,000 between April 10th, at the time the settlement was made, and April 18th, when it was to go into effect. Some time

after the date of this settlement, in addition to the overdrafts allowed Hillegass, Hartman, without the knowledge of the board, accepted from him more of these worthless Carrolton Coal Company bonds and other worthless bonds of the Alexander & Rich Mountain Company.

All these checks mentioned in the indictment are alleged overdrafts at the time they were paid, and the account showed that at no time did the defendant have a deposit of more than $2,000, and on all this indebtedness the bank subsequently succeeded in collecting less than $8,000. The defense was that Hillegass did not know he was overdrawing his account, and that in fact during the time of the statute of limitations, to wit, from March 10, 1906, to the time when Hillegass' operations with the bank ceased, he had deposited more money than he had drawn out. The court, in charging the jury, called attention to the evidence offered both by the government and the defense. We do not think it necessary to go into a detailed consideration of the reasons for a new trial. Those filed to the charge of the court fail to point out any error committed in that regard, and there are only one or two objections to the admission and rejection of evidence which need any attention.

1. Hartman, the cashier, whom it is alleged the defendant aided and abetted in the misapplication of the funds, was permitted to testify as to the information he gave to the board of directors and the president of the board, in the absence of defendant, in regard to the overdrafts of Hillegass, and to this testimony the defendant took an exception. The defendant is charged with aiding and abetting an officer of the bank in the misapplication of the funds. The misapplication of the funds with criminal intent by the officer whom the defendant aided and abetted were fundamental issues, and necessary to be established to the satisfaction of the jury by evidence pertinent to those issues, without regard to its connection with the defendant. It was very important in this case to know whether or not Hartman was authorized by the board of directors, either expressly or by implication, to cash the checks of the defendant, in order that it might be ascertained whether or not the payment of the overdrafts was a misapplication of the funds with criminal intent. See Brown v. United States, 142 Fed. 1, 73 C. C. A. 187.

2. We do not think the objections to the statements of Hillegass' accounts, made by Hartman, which had been handed to Hillegass quite a considerable time before the trial, to which he had made no objection, have any merit in them at all. At any rate, subsequently, counsel for the defendant practically withdrew any objection, and stated that it was their desire to have this paper go to the jury.

3. The question of whether or not the bank had received instructions from Washington not to declare dividends at any time during the period of Hillegass' transactions with it clearly has nothing to do with the case.

4. Hartman, who was the cashier charged with having made a misapplication of the funds, when testifying in this case, had before him a statement taken from the books of the bank, in which he had lumped many of the entries in the Hillegass account. Upon cross-examination, the defendant's counsel asked the witness to explain "what he

would have to do to unravel one of these lump charges." In other words, as will be seen from the record following this question, the cross-examination was directed toward showing by the witness that the time and labor necessary to work out an accurate result as to Hillegass' account with the bank would be great and very difficult. The proof of this fact could not aid the jury in arriving at a conclusion as to the guilt or innocence of the defendant. It would have been entirely proper for the defendant to cross-examine the witness from the books as to the correctness of his conclusions, and as to the correctness of the lump sums to which he testified; but there is nothing to indicate that this was the purpose of the question. Subsequently the court ordered that the witness during the recess should explain how he arrived at the lump sums from the books of the bank, and counsel for the defendant announced that was satisfactory.

5. The objection to the correspondence between the Farmers' National Bank, whose funds were misapplied, and the Second National Bank of Philadelphia, was admissible, for the purpose of proving that the Boyertown National Bank paid certain checks of Hillegass, the amount of which was charged to him on the books of the bank, but which checks could not be obtained, and for this purpose we think it was clearly admissible.

6. It will not be necessary to consider the remaining reasons for a new trial separately. It was incumbent upon the government to establish the overdrafts of Hillegass with criminal intent. In order to prove the overdrafts, the government was required to go back to the beginning of Hillegass' transactions with the bank, as his account had never been balanced during the whole time of his connection with the institution, and it was necessary to show the condition of the "discounted notes" account, as well as his transactions in overdrafts, as they were both so intermingled as to require an examination of both accounts in order to ascertain exactly his indebtedness to the bank in either. The intent alleged required affirmative proof of its existence, so that the letters written by Hillegass to Hartman in connection with his deposits and overdrafts, together with the kind of notes and securities generally sent to the bank, for which he in many instances received credit, and the irresponsibility of the parties whose checks and notes he accepted and foisted on the bank, were facts proper to submit, from which the jury could legitimately draw the inference that his overdrafts were made with the intent to defraud the bank.

The motion in arrest of judgment is overruled, and a new trial refused.