**UNITED STATES of America,**
**Appellee,**

v.

**George SPEARE, Appellant.**

**No. 163, Docket 27143.**

United States Court of Appeals
Second Circuit.

Argued Dec. 15, 1961.

Decided Jan. 4, 1962.

Jacob M. Mandelbaum, New York City, for appellant.

George F. Roberts, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., Southern District of New York, Andrew T. McEvoy, Jr., Asst. U. S. Atty., New York City, on the brief), for appellee.

Before LUMBARD, Chief Judge, and MOORE and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Speare appeals from a judgment of conviction entered in the Southern District of New York upon the verdict of a jury finding him guilty on 27 counts of an indictment charging him with aiding and abetting an officer of a federally insured bank in misapplying funds of the bank, and with conspiracy to do so. (18 U.S.C. §§ 656, 371.) Speare was sentenced to one year on each count, sentences to run concurrently. We affirm the judgment.

The evidence, if believed by the jury, established the following facts:

Speare was in the restaurant business, owning restaurants in New York, New Jersey and Florida. During the period covered by the indictment Speare had three accounts in the Greenwich Village branch of the Manufacturers Trust Company, a bank which was insured by the Federal Deposit Insurance Corporation. One of three accounts was carried in his own name, the other two under the names Mister Prime Ribs, Inc. and Hamburg Fair, Inc. At the same time Speare had another account in the Union County Trust Company, Elizabeth, New Jersey, in the name of Hubbard Operating Co. Inc.

During this same period Alfred Philip Austin was Assistant Manager of the Greenwich Village branch of Manufacturers Trust. Austin was indicted along with Speare, and pleaded guilty to embezzlement, misapplication of funds and conspiracy. Austin was the principal witness against Speare.

Speare engaged in a check "kiting" operation by which he deposited checks in the Hubbard account, then, before the checks could be collected, drew checks on that account for deposit in the accounts in Manufacturers.

Austin was put on notice of Speare's manipulations by repeated calls from an official of the Elizabeth bank who told Austin that he suspected Speare of promoting a check "kiting" scheme. Soon thereafter the Elizabeth bank refused to honor five of Speare's checks totalling $35,662.60, which were returned to Manufacturers, as having been drawn on uncollected funds. Since Speare's accounts were insufficient to cover a debit in this amount, Austin, after informing Speare of the return of checks, debited the amount against two accounts in which Speare had no interest. At the end of the month, in order to cover this wholly irregular transaction, Austin had Speare exchange checks between two of his accounts at Manufacturers (thus engaging in an intra-bank "kite"), and from the

spurious balance thus created, the two accounts previously debited with the amount of the returned checks, were credited with an equal amount. This arrangement still left Speare's accounts greatly overdrawn, of course, but in spite of this Speare was permitted to draw further checks. Austin covered up by keeping certain of Speare's checks in his desk drawer where they were found after Austin's arrest. During this period Austin was in frequent contact with Speare, urging him to cover the shortages.

The Government's theory is, in brief, that Austin misapplied the funds of the bank by paying them out to Speare and that Speare conspired with Austin, and aided and abetted him in doing so, by drawing on uncollected and insufficient funds.

Speare's position is that he was permitted to borrow from the bank by means of overdrafts, and that Austin's efforts were an attempt to cover up unrelated embezzlements. (Speare had previously been permitted to overdraw in amounts up to approximately $800, and Austin had authority to permit overdrafts up to $500.)

Speare's explanation of the situation was fully developed in the evidence submitted to the jury, and was fairly summarized and presented to the jury in the judge's charge. In so far as Speare's contention is based upon an issue of fact, the jury has rejected it by its verdict of guilty.

■ But Speare's position, though it is not so presented in his brief, might be considered to be the argument that, granting that all the facts are as proved by the government, the inference to be drawn from those facts is at least equally consistent with innocence, that is that, whatever Austin's role, Speare was merely borrowing from the bank with the ordinary borrower's intention of paying back the loan as soon as possible. If Austin was unauthorized to make such loans, Speare could not be charged with knowledge of that fact. And Speare had no way of knowing about Austin's irregular methods of trying to cover up the overdraft.

In so far as these considerations are a matter of fact the jury has given the answer. The question of whether criminal intent is inferable from the facts proved is a question for the jury. United States v. Hillegass, 176 F. 444, 446 (D.C. Pa.1910), aff'd 3 Cir., 183 F. 199, cert. den. 219 U.S. 585, 31 S.Ct. 470, 55 L.Ed. 347. To the extent that these considerations may go beyond issues of fact, and thus come within the province of this court, doubts have been resolved by United States v. Fromen, 265 F.2d 702 (2d Cir.1959), cert. den. 360 U.S. 909, where, on facts which are wholly indistinguishable from the facts of the present case, a conviction for aiding and abetting under 18 U.S.C. § 656 was upheld. See also United States v. Goodman, 110 F.2d 390 (7th Cir.1940); United States v. Hillegass, supra; Keliher v. United States, 193 F. 8 (1st Cir.1912).

The case on conspiracy is based on essentially the same evidence as that which supports the charge of aiding and abetting. It involves, of course, the idea of collaboration, and again that collaboration must be inferred from Speare's withdrawal of the bank's funds with the knowledge and cooperation of Austin.

■ Appellant also complains of the trial court's rejection of an exhibit which tended to show that at a previous time and with relation to another account the bank permitted Speare to make small overdrafts. But the refusal to admit the exhibit could not have harmed defendant, since the bank's practice in this regard was amply established by other evidence, and was conceded by the Government.

Affirmed.