## WALSH v. UNITED STATES.

(Circuit Court of Appeals. Seventh Circuit. October 5, 1909. Petition for Rehearing Denied December 3, 1909.)

No. 1,469.

1. CRIMINAL LAW (§ 100*) — JURISDICTION — CHANGE OF BOUNDARIES OF JUDICIAL DISTRICT.

Act March 3, 1905, c. 1427, §§ 2, 3, 23, 33 Stat. 992, 997 (U. S. Comp. St. Supp. 1909, pp. 123, 130), which authorize the appointment of an additional district judge for the Northern district of Illinois, change the boundaries of said district in creating the new Eastern district, and provide that "all prosecutions for crimes or offenses heretofore committed within either the Northern or Southern districts of Illinois as hitherto constituted shall be commenced and proceeded with in each of said dis-

---

tricts the same as if this act had not been passed," make the new judge appointed thereunder a judge of the old district in respect to past offenses as well as judge of the new district.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 100.*]

2. CRIMINAL LAW (§ 371*)—EVIDENCE—OTHER OFFENSES AS EVIDENCE OF INTENT.

Where fraudulent intent is an essential element of the offense charged, evidence of other acts of the defendant of a kindred nature are competent to illustrate the character of the transaction in question and throw light on the intent with which this particular act was done.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. § 371.*]

3. BANKS AND BANKING (§ 256*) — NATIONAL BANKS — MISAPPLICATION OF FUNDS BY OFFICERS.

For an officer of a national bank who is also a promoter of various enterprises to obtain the funds of the bank on the security of unmarketable bonds of his own enterprises, at the risk of the interest of the bank, is a misapplication of the funds which cannot be covered up by entering the transactions on the books as loans and investments.

[Ed. Note.—For other cases, see Banks and Banking; Cent. Dig. §§ 958–964, 967; Dec. Dig. § 256.*]

4. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—PROSECUTION OF OFFICER FOR MISAPPLICATION OF FUNDS—QUESTIONS FOR JURY.

In a prosecution of an officer of a national bank for misapplying its funds, where the transactions as shown by the books of the bank were legitimate and proper on their face, the question of intent is one for the jury under proper instructions.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.*]

5. CRIMINAL LAW (§ 822*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

In determining the correctness of instructions on a given subject-matter, detached phrases and sentences cannot be singled out and considered alone, but must be construed with their context.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1990, 1991, 1994, 1995, 3158; Dec. Dig. § 822.*]

6. CRIMINAL LAW (§ 822*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

Instructions considered in a prosecution of an officer of a national bank under Rev. St. § 5209 (U. S. Comp. St. 1901. p. 3497), for willfully misapplying funds of the bank, and, taken together, *held* to correctly submit to the jury the question of wrongful intent.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 822.*]

7. CRIMINAL LAW (§ 878*)—TRIAL—VERDICT—INCONSISTENT FINDINGS.

Where the gravamen of the charge in several counts of an indictment is the same, a verdict of guilty on each is not inconsistent because they differ in respect to immaterial particulars concerning the means by which the crime was committed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2098–2101; Dec. Dig. § 878.*]

8. CRIMINAL LAW (§ 957*)—TRIAL—VERDICT—IMPEACHMENT BY JUROR.

A juror in a criminal case cannot afterward impeach a verdict in which he joined.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2392–2395; Dec. Dig. § 957.*]

In Error to the District Court of the United States for the Northern Division of the Northern District of Illinois.

John R. Walsh was convicted of a criminal offense, and brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John S. Miller, for plaintiff in error.

Edwin W. Sims, U. S. Dist. Atty., Fletcher Dobyns, Sp. Asst. U. S. Atty., and Francis G. Hanchett and Robert W Childs, Asst. U. S. Attys.

Before GROSSCUP and BAKER, Circuit Judges, and HUM- PHREY, District Judge.

HUMPHREY, District Judge. Plaintiff in error was found guilty upon each of 54 counts of an indictment, charging him with a violation of section 5209, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3497), by willfully misapplying moneys, funds, and credits of the Chicago National Bank with intent to injure and defraud the said bank.

The record is voluminous, and a large number of errors are assigned. Only the more serious contentions will be discussed here.

It is contended that the court was not legally organized. This involves a construction of Act March 3, 1905, c. 1427, 33 Stat. 992 (U. S. Comp. St. $upp. 1909, p. 123), changing the boundaries of judicial districts in Illinois, and we think presents no difficulties.

Judge Landis had power to call the grand jury, which returned the indictment. The statute under which he was appointed is couched in broad general terms, and it is evident that the term "Northern district of Illinois" is used to designate the district as it existed both before and after the passage of the act. The purpose of the statute was to give to the new judge all the power possessed by a judge for the Northern district of Illinois.

The provisions of section 23 of the act (U. S. Comp. St. Supp. 1905, p. 96; Supp. 1909, p. 130) support this view:

"That all prosecutions for crimes or offences heretofore committed within either the Northern or Southern districts of Illinois, as hitherto constituted, shall be commenced and proceeded with in each of said districts respectively, the same as if this act had not been passed."

In other words, for past offenses, the old Northern district of Illinois was preserved, and in creating the office of district judge for the Northern district of Illinois Congress created the office of judge for the old Northern district for past offenses and of judge for the new Northern district for future offenses.

The same reasoning applies in answer to the objections made to Judge Anderson, who presided upon the trial in the court below, sitting by assignment for the Northern district of Illinois.

It is urged on behalf of plaintiff in error that the verdict is not sustained by the evidence because the record as a whole does not show any guilty intent, and also that the trial court erred in permitting the jury to consider evidence of other acts of the defendant of a kindred nature, not counted upon in the indictment.

Where fraudulent intent is an essential element of the offense charged, evidence of other acts of defendant of a kindred nature are competent to illustrate the character of the transaction in question, and throw light on the intent with which this particular act was done. We see no error in admitting evidence of similar transactions to prove intent.

We cannot agree with counsel for the plaintiff in error in calling the transactions complained of in the indictment "legitimate and proper banking transactions." For a promoter of various enterprises to obtain the funds of a bank on the security of unmarketable bonds of his own enterprises at the risk of the interests of the bank is not proper and legitimate banking, and the entries on the books of the bank as loans and investments do not conceal the fraud thus perpetrated upon the bank.

The language of Judge Archbald in his concurring opinion in Lear v. U. S., 147 Fed. 359, 77 C. C. A. 537, is applicable:

"A reckless act, moreover, is always regarded as the equivalent of a willful one, and that at least was here. The possibility of injury was apparent on the face of the transactions, notwithstanding which the interests of the institution of which he was the trusted head were put aside, and his own made paramount in utter disregard of the outcome."

But even if the transactions were legitimate and proper per se, we see no error. Evidence of similar transactions was admissible on the question of intent, and we think the instructions of the lower court correctly laid down the law on the point of criminal intent. This question was left to the jury under instructions which were unexceptionable as matter of law and were applicable to the facts of the case, and the finding of the jury is supported by the record. Agnew v. U. S., 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624; Coffin v. U. S., 162 U. S. 664, 16 Sup. Ct. 943, 40 L. Ed. 1109; U. S. v. Harper (C. C.) 33 Fed. 471; Peters v. U. S., 94 Fed. 127, 36 C. C. A. 105; United States v. Allis (C. C.) 73 Fed. 165.

Objection is made to the charge of the court, and especially to the following:

"The law presumes that every man intends the natural, legitimate, and necessary consequence of his acts. Wrongful acts, knowingly or intentionally committed, can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud may be presumed when the unlawful act which results in loss or injury is proved to have been knowingly committed."

The parts of the charge excepted to must be read in context with and interpreted by the paragraph preceding and the paragraph following the parts excepted to, because they relate to and are explanatory of the same subject-matter. Coffin v. U. S., 162 U. S. 664, 16 Sup. Ct. 943, 40 L. Ed. 1109; Agnew v. U. S., 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624.

Neither detached phrases nor detached sentences relating to a given subject-matter may be singled out for construction or interpretation without reference to the context, involving the same subject-matter.

The complete instruction as given by the court on this subject was as follows:

"If the defendant withdrew moneys from the bank for the use of the Illinois Southern Railway Company, the Southern Indiana Railway Company, the Chicago Chronicle Company, the Bedford Quarries Company, the Equitable Trust Company, or the Wisconsin & Michigan Railway Company, or any of them, by means of checks drawn by these companies on said bank when the company drawing the check had no funds or moneys on deposit against which

to draw. if the defendant acted in good faith, honestly believing that the corporation or company so withdrawing the funds or moneys would be able to repay the same, when required, then the defendant would not be guilty of the intent to defraud the bank as charged; but, on the.other hand, if the defendant acted in bad faith, and did not believe, and had no reasonable ground to believe, that the company or corporation so withdrawing such moneys or funds could repay such overdrafts when required to do so, then the defendant had no lawful right to make such overdrafts, or allow them to be made.

"The acts constituting criminal misapplication must be done or committed with intent to injure or defraud the bank. This intent to injure or defraud is made by the statute an ingredient or element in this offense. In directing that this offense, or the acts constituting it, must be committed with intent to injure or defraud the bank, the statute does not mean that it must be made to appear that the accused had malice or ill will toward the bank. These terms, as used in the statute, mean that general intent to injure or defraud which always arises, in contemplation of law, when one willfully or intentionally does that which is illegal and fraudulent, and which, in its necessary and natural consequences, must injure another. So that while the offense of willful misapplication of the moneys, funds, or credits of the bank must be committed by the accused with intent to injure or defraud the bank, that intent may be shown or be presumed from the doing of the wrongful, fraudulent and illegal acts which in their necessary results naturally produce loss or injury to the bank.

"The law presumes that every man intends the natural, legitimate, and necessary consequences of his acts. Wrongful acts, knowingly or intentionally committed, can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud may be presumed when the unlawful act which results in loss or injury is proved to have been knowingly committed.

"If therefore the moneys, funds, or credits of the Chicago National Bank are shown to have been willfully misapplied by the defendant and converted to the use of himself or some corporation other than the bank, whereby, as a necessary, natural, and legitimate consequence, the bank was injured and defrauded as charged, you would be authorized to find that such was his intent, if such intent is in harmony with the other proofs in the case."

Counsel have singled out the words excepted to and argue that they contain reversible error on authority of Hibbard v. U. S. (decided by this court at the January session, 1909) 172 Fed. 66.

Here the parts excepted to were directly modified by the two paragraphs preceding and the paragraph immediately following the sentences excepted to, and the jury are advised that they are authorized "to find the intent to injure or defraud if such intent is in harmony with the other proofs in the case." This clause saves the instruction from being assailed as was a similar instruction in Hibbard v. U. S. There was no suggestion here, and no language from which the jury could possibly infer, that the burden of proof shifts to the defendant; or that, on proof of an unlawful act knowingly committed, it thereupon became the duty of the defendant to overcome this presumption of guilty intent by evidence excluding every reasonable doubt of guilty intent. The language was that the intent to injure or defraud "may be shown or be presumed"—not that it is shown or necessarily is presumed—"from the doing of the wrongful, fraudulent, and illegal acts knowingly or intentionally committed," and that the jury would be authorized to find that such was his intent, not solely from proof of the illegal act knowingly committed, but "if such intent is in harmony with the other proofs in the case."

Also. the Hibbard Case is distinguishable on the difference between

the specific statutory intents described in sections 5480 and 5209, Rev. St. U. S., respectively (U. S. Comp. St. 1901, pp. 3696, 3497). Under section 5480, proof of individual instances where victims of the scheme were defrauded would raise no prima facie presumption that the scheme was devised to defraud; it may be that the ordinary and legitimate consequences of the acts of defendant in defrauding persons who used the mail to correspond with him in relation to his scheme would not establish the specific intent of "having devised a scheme to defraud by use of the mails."

Under section 5209, there could be misapplications of bank funds by an officer which would be innocent and not criminal, and there could be misapplications which under the statute would be criminal. What would show the difference between misapplications which were criminal and those which were not, what would show innocence or guilt, good faith or bad faith, the court sought by the instruction carefully to define and we think did fairly define.

The objection to the verdict on the ground of inconsistency and repugnancy we do not think is well taken. None of the alleged inconsistencies are substantial, nor of such a character as the law will recognize. A verdict will not be set aside as inconsistent, because it finds differently as to counts in which there is no material difference. So long as there is no inconsistency in the verdict as to the substance of the matter charged in the various counts, the verdict will not be disturbed. If the gravamen of the charge in each count, on which there has been a verdict of guilty, is the same, there is no inconsistency in the verdict. If, in contemplation of law, the legal effect of the allegations in the various counts on which there has been a verdict of guilty is the same, the courts will not upset the verdict on the ground of inconsistency, where the only inconsistency is in respect to immaterial particulars concerning the means by which the crime was committed. Griffin v. State, 18 Ohio St. 438; Reg. v. O'Brian, 1 Brit. Crown Cases, 9; Hudson v. State, 1 Blackf. (Ind.) 317; Hathcock v. State, 88 Ga. 91, 13 S. E. 959; Tabler v. State, 34 Ohio St. 127; People v. Sullivan, 173 N. Y. 122, 65 N. E. 989, 63 L. R. A. 353, 93 Am. St. Rep. 582; Lyons v. People, 68 Ill. 271; Langford v. People, 134 Ill. 444, 25 N. E. 1009.

By law each one of the counts in a given group is considered to state the same offense, and the gravamen of the offense stated in each count of these groups is the same. In finding the defendant guilty under all the counts in one of these groups, the jury have found him guilty of the same offense under each count. Here the gravamen of the offense was the misapplication of funds, and the method by which this misapplication was accomplished is immaterial.

It is entirely immaterial whether plaintiff in error made loans on bonds or on certificates for bonds. It is immaterial whether bonds were unsecured or insufficiently secured. It is immaterial whether plaintiff in error bought bonds from himself or from the Illinois Southern Railway Company. It was immaterial whether the bonds were unmarketable bonds or worthless as bank assets, or worth much less than the sum applied to the purchase thereof. In either of the contingencies

in any of these alleged inconsistencies the substance of the offense, misapplication of funds, was the same, and in legal effect the offenses were identical.

Objection is made to the verdict because of improper influences working upon the jury during the trial and during the deliberations of the jury, and also because of the hesitancy and vacillation of one juror upon the polling of the jury after the verdict was returned. The record does not show that any improper influence worked upon the jury. The return made to the court was in fact the verdict of 12 jurors. The attempt by one of them afterwards to impeach his verdict can have no consideration. This doctrine is well established and is based upon reason as well as upon authority.

In the other point on which assignments are based we find no reversible error.

The judgment of the court below is affirmed.