### SCHULTZ v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 21, 1912.)

No. 3,582.

1. CRIMINAL LAW (§ 371*)—EVIDENCE—INTENT—SUBSEQUENT ACTS.

In a prosecution for uttering a raised silver certificate on July 4, 1908, evidence that another, in company with accused, on August 6, 1908, attempted to pass a similar bill on another was admissible to show accused's fraudulent intent.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. § 371.*]

2. CRIMINAL LAW (§ 371*)—EVIDENCE—OTHER OFFENSES—INTENT—DISCRETION.

Where intent, motive, knowledge, or design is one of the elements of the crime charged, or if it is claimed that the crime was committed in accordance with a system, plan, or scheme, evidence of other like conduct at or near the time charged is admissible; the question as to whether the other occurrence sought to be proved is at or near the time of the transaction charged being a matter almost wholly within the discretion of the court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. § 371.*

Evidence in criminal prosecutions of other acts and offenses to show knowledge, see note to Lobosco v. United States, 106 C. C. A. 479.]

3. CRIMINAL LAW (§§ 825, 1056*)—TRIAL—INSTRUCTIONS—LIMITATION OF EVIDENCE.

Failure of the court in its instructions to limit the application of certain evidence, applicable only to show accused's intent, was not ground for reversal, where no exception was taken to the charge, and no request for special instructions made.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2005, 2668, 2670; Dec. Dig. §§ 825, 1056.*]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Mel Schultz was convicted of feloniously passing, uttering, and publishing a raised silver certificate of the currency of the United States, and he brings error. Affirmed.

P. C. Young, of Fredonia, Kan., for plaintiff in error.

McCabe Moore, Asst. U. S. Atty., of Kansas City, Mo. (Harry J. Bone, U. S. Atty., of Topeka, Kan., on the brief), for the United States.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SMITH, Circuit Judge. Mel Schultz, hereafter called the defendant, was indicted in the District Court of the United States for the District of Kansas. The indictment was in three counts. The first charged him with altering a silver certificate with intent to defraud C. C. McHenry. The second charged him with altering a silver certificate with intent to defraud divers persons. Upon these counts he was found not guilty. The third count was as follows:

"And the grand jurors aforesaid, on their oath aforesaid, do further find and present that at the county of Greenwood, in the said division of said district, and within the jurisdiction of this court, on or about the 6th day of August, 1908, one Mel Schultz, then and there being, did then and there, with intent to defraud one C. C. McHenry, willfully, knowingly, unlawfully, and feloniously pass, utter, and publish to and upon said C. C. McHenry a certain genuine $1 United States silver certificate, then and there being unlawfully and feloniously altered by having pasted thereon the figure 1 on each of the four places on the face thereof where said figure appeared, the figure 5, so as to make said instrument read and appear as a $5 United States silver certificate, with intent then and there and thereby unlawfully and feloniously to pass, utter, and publish said instrument to and upon said C. C. McHenry, as a genuine $5 United States silver certificate, the said genuine $1 silver certificate then and there being a valid obligation and security of the United States, he, the said Mel Schultz, then and there knowing the same to be falsely altered as above set forth, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

Upon this count he was found guilty, was sentenced to a year and a day in the Leavenworth penitentiary and a fine of $500, and to pay the costs, and to stand committed until such fine and costs are paid.

[1] Charles Copenhaver, 16 years of age, testified: That he was in a photograph car occupied by the defendant the last of June, 1908, and saw the defendant in company with Elmer Cale. Cale asked him to go up town and buy some ink, which he did, and when he returned he found the defendant and Cale pasting the figure 5 over the figure 1 on a dollar silver certificate. That they told him they wanted ink to use in connection with this work. C. C. McHenry testified: That on July 4, 1908, he was keeping a stand in front of the store of Robert Robertson at Severy, Kan., during a celebration. The defendant and Elmer Cale came to his stand to make a purchase, probably of cigars, and handed to him a $5 bill. He took it back to Mr. Robertson to get it changed, and when the latter took the bill one of the 5's came loose. Mr. Robertson and the witness went back to the stand, and the witness said to the defendant that the bill had been raised, and he better put it in his pocket, or it might get him into trouble. On cross-examination he was asked if defendant did not say:

"That is not the bill I gave you. The bill I gave you was a good one. If this is not good, I know where I got it, and will make the fellow come across."

And if Elmer Cale did not say:

"Did you examine the bill you got in the crap game?"

And the defendant said: "No." Mr. Robertson was asked substantially the same questions. The government then called C. C. Cline, who testified: That at Fredonia, Kan., on August 6th, at the

county fair, he was keeping a stand, and that about 9 o'clock p. m., Clarence Cass came to his stand, accompanied by the defendant. Cass called for some tobacco, and handed him what appeared to be a $5 bill. He took it, and holding it up toward the light, found that he could not see through the figures 5. He handed it back to Cass, and told him that it was not good. Cass left the stand, did not take the tobacco, and went off in company with the defendant.

This and similar evidence by other witnesses was objected to by the defendant, and overruled, and he excepted. A motion to strike such evidence was made, and the question of the admissibility of it was raised in divers ways.

As clearly foreshadowed prior to the introduction of this testimony, defendant subsequently called Elmer Cale, who testified that the defendant was in a crap game, and got the bill in part for his winnings, and that he was with the defendant at the time the bill was passed, and heard defendant say:

"That is not the bill I gave you. The one I gave you was good."

And:

"If it is not good, I know where I got it, and will make the fellow come across."

If this incident in fact took place, it was clearly part of the res gestæ and was admissible. The defendant himself testified to the same state of affairs.

As the crime with which the defendant was charged took place on July 4th, he insists that evidence of his conduct in company with Cass on August 6th thereafter would not be admissible against him. Ordinarily the commission of one crime, in and of itself, has no legitimate tendency to prove the commission of another crime; but in Wood v. United States, 16 Pet. 342, 10 L. Ed. 987, Story, Justice, said:

"The question was one of fraudulent intent or not; and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment. Indeed, in no other way would it be practicable, in many cases, to establish such intent or motive, for the single act, taken by itself, may not be decisive either way; but, when taken in connection with others of the like character and nature, the intent and motive may be demonstrated almost with a conclusive certainty. The treatises on Evidence by Mr. Phillips and Mr. Starkie contain many illustrations to this effect. See Stark. Evid. vol. 1, p. 64; Id., vol. 2, pp. 220, 221 (2d Lond. Edit. 1833); Phil. Evid. by Cowen, vol. 1, c. 7, § 7, pp. 179, 180; Id., vol. 2, p. 452, note 333; Id., p. 465, note 352 (Edit. 1839). They constitute exceptions to the general rule, excluding evidence not directly comprehended within the issue, or rather, perhaps, it may with more certainty be said, the exception is necessarily embodied in the very substance of the rule; for whatever does legally conduce to establish the points in issue is necessarily embraced in it, and therefore a proper subject of proof, whether it be direct or only presumptive. This doctrine was held in a most solemn manner in the case of King v. Wylie, 4 Bos. & Pul. 92, where upon an indictment for disposing and putting away a forged bank note, knowing it to be forged, evidence was admitted of other forged notes having been uttered by the prisoner, in order to prove his knowledge of the forgery. The same doctrine has been held in cases of the uttering of bad money and spurious notes, and also in cases of conspiracy. The same

doctrine was affirmed and acted upon by this court, in the case of United States v. Wood, 14 Pet. 430, 10 L. Ed. 527, in the case of a prosecution for perjury."

[2] If intent, motive, knowledge, or design be one of the elements of the crime charged, and especially if it is claimed that the crime was committed in accordance with a system, plan, or scheme, evidence of other like conduct by the defendant at or near the time charged is admissible. Brown v. United States, 142 Fed. 1, 73 C. C. A. 187; Dillard v. United States, 141 Fed. 303, 72 C. C. A. 451; Walsh v. United States, 174 Fed. 615, 98 C. C. A. 461; Ex parte Glaser, 176 Fed. 702, 100 C. C. A. 254; Thompson v. United States, 144 Fed. 14, 75 C. C. A. 172, 7 Ann. Cas. 62.

The question at once arises: What is meant by at or near the time of the transaction charged? This is a matter almost wholly confided to the discretion of the trial court. In Packer v. United States, 106 Fed. 906, 46 C. C. A. 35, it was held that transactions a year prior to the one in question might be received in the discretion of the trial court.

The next question is whether such evidence of the conduct of the defendant after the commission of the alleged crime is admissible. In United States v. Doebler, Baldw. 519, Fed. Cas. No. 14,977, Mr. Justice Baldwin said:

"It is objected that the evidence of passing other notes in this case is inadmissible, because it was after the delivery or passing the one laid in the indictment. It seems both were passed at the time of the Lancaster races, but it is not proved whether the one delivered to Rallston was previous to the one delivered to Empich; nor is it material if there was an interval, or how long, so that there is any fair ground for presuming the two acts of uttering to have been so connected as to show a scienter in the one charged in the indictment (Russ. & R. 135, 147), nor whether the other notes are of the same manufacture (Car. Cr. Law, 195). The whole conduct of the prisoner is evidence of his knowledge of the forgery. The jury may judge, from his conduct on one occasion, of his knowledge on another. Where crimes intermix, the court must go through the whole detail. The more detached they are in point of time, the less relation they will bear to that stated in the indictment. But in such case the only question would be whether the evidence was sufficient to warrant the inference of knowledge from such particular transaction. It would not make the inference inadmissible."

In United States v. Snyder (C. C.) 14 Fed. 554, Circuit Judge McCrary, Nelson, District Judge, concurring, said:

"The offense charged was the making of false returns for the quarter ending December 31, 1880. The prosecutor was allowed, against the objection of defendant, to introduce in evidence, not only the false returns for that quarter, but other similar returns for other periods before and after the time covered by the indictment, all being in the handwriting of the defendant Bertram. There was no error in this ruling. Where the question is one of fraudulent intent, it is allowable, as well in criminal as in civil cases, 'to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment.'"

In Withaup v. United States, 127 Fed. 530, 62 C. C. A. 328, where a man was charged with having upon the back of a pension check given in May forged the name of the deceased pensioner, and the

government introduced the pay voucher for August following, similarly forged, this court, by Van Devanter, then Circuit Judge, said:

"No error was committed in admitting in evidence the May and August vouchers and the Villa Park postal card. They were forgeries, equally with the indorsement upon the May check, because all were written after the death of the pensioner. The evidence tended to show that these forgeries, and the uttering of the forged indorsement, were connected acts in a single scheme to defraud, perpetrated by the defendant. The vouchers and the postal card were therefore admissible, not to show other offenses distinct from those for which he was upon trial, but to prove the guilty intent and knowledge with which the principal acts charged were done."

In Bryan v. United States, 133 Fed. 495, 66 C. C. A. 369, it was held that the fact that molds for making 25-cent pieces were found in the defendant's possession on the 13th of August was admissible in a prosecution against him for uttering counterfeit 5-cent pieces on the 31st of July and the 1st of August previous.

Bearing in mind that the authorities state that the rule upon this subject is alike in civil and criminal cases, attention is called to Exchange Bank v. Moss, decided by this court in 149 Fed. 340, 79 C. C. A. 278, when Judge Hook said:

"In the application of the rule there is no distinction between those acts that were committed before and those that were committed after the one involved in the case on trial. The latter may be as significant of the intent of the defendant in the particular case as the former, and that is the quality which justifies the admission of the evidence. It is sometimes said that the collateral instances, evidence of which is admissible, are those that occurred at or about the time of the one in question, yet in practice the proximity in point of time is largely left to the discretion of the trial court. The same is true of the degree of similarity. There are cases in which such evidence was held admissible, though it related to acts preceding the one in question by several years."

And on the very subject now under consideration, namely, the admissibility of transactions after the one charged, Mr. Justice Story, in Wood v. United States, 16 Pet. 342, 10 L. Ed. 987, said:

"The other objection has as little foundation; for fraud in the first importation may be as fairly deducible, from other subsequent fraudulent importations by the same party, as fraud would be, in the last importation, from prior fraudulent importations. In each case the quo animo is in question, and the presumption of fraudulent intention may equally arise and equally prevail."

And in Penn Mutual Life Insurance Co. v. Mechanics' Savings Bank & Trust Co., 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33, 70, Taft, Circuit Judge, said:

"It is a well-established rule of evidence that, where the issue is the fraud or innocence of one in doing an act having the effect to mislead another, it is relevant to show other similar acts of the same person, having the same effect to mislead, at or about the same time, or connected with the same general subject-matter. The legal relevancy of such evidence is based on logical principles. It certainly diminishes the possibility that an innocent mistake was made in an untrue and misleading statement to show similar but different misleading statements of the same person about the same matter, because it is less probable that one would make innocent mistakes of a false and misleading character in repeated instances than in one instance. Thus, where one was on trial for selling skimmed milk for fresh milk, in violation of the statute, it was held competent to show other instances of similar sales on

other days by the accused about the same time, because, if he sold skimmed milk in repeated instances, it was rendered more probable that he knew its character in each instance. He might have made the mistake once, but not frequently. Bainbridge v. State, 30 Ohio St. 264. So, in this court, where the question was of the defendant's motive and knowledge in making statements concerning the character of a silver mine, we held it competent to show an elaborate and fraudulent scheme to mislead, not the plaintiff, but another, into the purchase of the mine, although the scheme was concocted and carried into attempted execution at least two years before the statements and sale to the plaintiffs. It was the circumstances that the acts related to the sale of the same mine, and that the motive for its sale might be presumed to continue, that removed the objection based on remoteness in point of time. Mining Co. v. Watrous, 9 C. C. A. 415, 61 Fed. 163. Judge Lurton, in delivering the opinion of the court in that case, said: 'It is not, in such a case, essential that these former acts of fraud were not contemporaneous with the transaction under inquiry. If they were frauds of like character, and especially if they concerned former efforts to sell the same property, they are admissible. Remoteness in point of time may weaken their evidential value, but will not ordinarily justify exclusion.' "

And the court held that in an application for life insurance, where an untrue report was made as to what other life insurance the applicant had, it was admissible to show that in subsequent applications to other companies a similar untrue statement was made.

There seems to be no doubt that the evidence in question was admissible.

[3] Some complaint is made that the court in its charge to the jury failed to point out the only use to which this evidence could be put; but there were no exceptions to the charge as given, or to the absence of anything from the charge, and there was no request for special instructions as to how far the jury could consider this evidence. There is, therefore, no ground for complaint upon that subject. Texas & Pacific Railway Co. v. Volk, 151 U. S. 73, 14 Sup. Ct. 239, 38 L. Ed. 78; Isaacs v. United States, 159 U. S. 487, 16 Sup. Ct. 51, 40 L. Ed. 229; Goldsby v. United States, 160 U. S. 70, 16 Sup. Ct. 216, 40 L. Ed. 343.

No error is found, and the judgment is affirmed.