## HARRIS v. UNITED STATES.

### (Circuit Court of Appeals, Second Circuit. May 11, 1921.)

### No. 184.

**1. Criminal law ⟨⟩844(1)—Exception to charge must be specific and point out error.**

An exception by accused to the charge of the court ought to be specific and explicit, and show what ruling is claimed to be error.

**2. Criminal law ⟨⟩1059(2)—Exception to charge held not to point out error relied on.**

In a prosecution for violating the Harrison Narcotic Drug Act (Comp. St. §§ 6287g–6287q), an exception by the accused to that portion of the court's charge which described the circumstances under which a physician might prescribe narcotics in the course of his practice was sufficiently specific as to the portion of the charge complained of, but did not call the judge's attention to the claimed error in the charge, and does not entitle accused to a reversal, unless the instructions were grossly and manifestly inadequate and unfair.

**3. Criminal law ⟨⟩823(2)—Court's explanation held to render harmless instruction accomplice was corroborated.**

Where the court, after accused excepted to that portion of the charge stating there was some corroboration of an accomplice, again told the jury that he did not mean to express any opinion as to the facts, but merely stated the facts by way of illustration, and that the jury were the exclusive judges of the fact, any error in the charge as given was corrected by the explanation.

**4. Criminal law ⟨⟩200(6)—Acquittal of conspiracy does not prevent conviction on counts charging acts as substantive offenses.**

A conspiracy to commit an offense is an offense separate and distinct from the offense itself, and therefore a verdict of not guilty of one count of an indictment alleging conspiracy does not prevent a conviction on the other counts, charging the same acts as substantive offenses.

**5. Indictment and information ⟨⟩84—Accessory before the fact may be charged as principal, and facts showing participation need not be alleged.**

Under Criminal Code, § 332 (Comp. St. § 10506), making a principal one who at the common law would have been an accessory before the fact, such an accessory may be charged as having done the act himself, and be indicted and punished accordingly, and in such cases it is not necessary to set out the facts by which he aided and abetted or advised and procured the commission of the offense.

**6. Criminal law ⟨⟩371(1, 12)—Evidence of other sales of narcotics admissible to show intent and motive.**

In a prosecution against a physician for aiding and abetting a druggist in violating the Harrison Narcotic Drug Act by writing prescriptions for drug addicts, the writing of prescriptions for sales other than those alleged was admissible, notwithstanding the general rule that evidence tending to show the commission of another independent crime, even of the same kind, is inadmissible, since one of the exceptions to that rule makes such evidence admissible if intent or motive is one of the elements of the crime charged and the similar acts occurred at or near the time charged.

**7. Criminal law ⟨⟩1036(3)—Contention that evidence admissible only as to conspiracy was considered on substantive charge not meritorious, where no objection below.**

In a prosecution on an indictment charging substantive offenses in several counts and a conspiracy to commit such offenses in one count, where the jury found defendant guilty of the substantive offenses, but

not guilty on the conspiracy count, accused is not entitled to reversal of the conviction for the substantive offenses, on the ground that evidence was received which was admissible only on the conspiracy charge, where there was no showing that evidence introduced only on the conspiracy charge was used to sustain the substantive counts, and defendant did not object to the reception of any of the evidence, nor seek to limit any of it to any particular count.

In Error to the District Court of the United States for the Southern District of New York.

Leopold Harris was convicted of aiding and abetting another in violating the Harrison Narcotic Drug Act, and he brings error. Affirmed.

Koenig, Sittenfield & Aranow and Barnett E. Kopelman, all of New York City (Raymond H. Sarfaty and Frank Aranow, both of New York City, of counsel), for plaintiff in error.

Francis G. Caffey, U. S. Atty., of New York City (David V. Cahill, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. The indictment charged one Joseph Freilich, a druggist, with violating Harrison Narcotic Drug Act Dec. 17, 1914 (38 St. at Large, p. 785 [Comp. St. §§ 6287g–6287q]). It also charged the plaintiff in error, hereinafter called the defendant, with aiding and abetting Freilich therein. The indictment was filed on June 24, 1919, and as presented it contained seven counts, six charging substantive offenses and one charging conspiracy. Freilich pleaded guilty on June 25th to all the counts. The trial began on July 10, 1919, and was concluded on the next day. The promptness with which the case was brought to trial is deserving of all commendation. Promptitude in such cases is essential to any efficient administration of the criminal law. At the trial counts 3 and 4 were dismissed, and acquittal was directed on count 1. The jury rendered a verdict of guilty on counts 2, 5, and 6, and not guilty on count 7, which was the conspiracy count. The defendant Harris was sentenced to two years in the United States Penitentiary at Atlanta, Ga. Freilich was fined $1,000 and paid his fine. That part of count 6 which relates to the defendant is found in the margin.[1] Counts 2 and 5 were similar, only naming a different individual as the one receiving the drug.

The defendant is a duly licensed physician and is registered under the Harrison Narcotic Law. He has been practicing medicine for 23 years.

[1] "That said Leopold Harris on April 5, 1919, in the Southern District of New York, and within the jurisdiction of this court, did unlawfully, knowingly and willfully aid, abet, counsel, command, induce, and procure the said Joseph Freilich to sell, barter, dispense, distribute, and give the aforesaid 59½ grains of heroin and the said 4 grains of cocaine to the said Matthew McGovern, not in pursuance of any written order of the said Matthew McGovern on a form issued in blank for that purpose by the Commissioner of Internal Revenue of the United States, against the peace of the United States and their dignity, and contrary to the form of the statute of the United States in such case made and provided (Act of December 17, 1914, and section 332, U. S. C. C.)."

Before proceeding to a consideration of the errors assigned, we may direct attention to certain testimony. The defendant testified that he began to write prescriptions for drug addicts in January, 1918, and that it was a common thing for him to have a couple of hundred addicts in a day, and that there might have been 250 in a day. His usual office charge was from $2 to $5, or $10 a visit in his office. His testimony was to the effect that drug addiction is a disease. "At present," he testified, "there is no cure, and there is only one method that will cure them, as soon as mine is perfected," and "the cure is in the blood, the patient's own blood. * * * No drug will cure it, but the cure is the patient's own blood." He had no faith in what is known as "the reduction method of treatment" and thought it had done many times more to render the victims incurable than to cure them. He testified:

"I asked some of my patients to permit me to experiment upon my theory, and I got one or two to permit me; one I cured, and I was arrested right then, and I got the history of one patient that I started on."

A member of the New York City police force for 14 years, who had been assigned to the narcotic squad and was not a drug addict, and who got a prescription from the defendant, testified as follows:

"I told him I wanted to get a scrip for some stuff. He then said, 'What kind of stuff do you use?' I said, 'I use heroin.' He said, 'Where do you live?' I said, 'I live in 341 East Thirtieth street.' He said, 'Where were you getting your stuff before?' I said that I just came down from Weehawken, N. J., and I bought it up there in the street off a peddler. He said, 'I will have to give you an examination.' I said, 'All right.' He said, 'Come in this room.' He brought me in another room, and told me to drop my pants and lift up my shirt, and he examined my heart; he put the stethoscope on my heart, and in the presence of the lieutenant in the United States army uniform, he shook his head, 'Why, you are a physical wreck,' he said, 'the heroin you have been using is killing you.' He said, 'How do you use it?' I said, 'I blow it.' He then looked up my nose, and to this other man he said, 'Just listen to this man's heart from the use of this heroin.' The other man was Henry Harris. I don't know if he is a doctor or not. He is a nephew of Leopold Harris. Henry Harris put the instrument in his ears and shook his head, and also stated that I was a wreck from the use of that drug. He said, 'Would you take a blow now, if you got it?' I said, 'Doctor, yes, I would.' He said, 'You are too willing; I will give you a scrip, but I won't give you a scrip for heroin; I will give you a scrip for morphine, because I am afraid you will die if you keep using heroin.' He then took me out in the outer office, and he said, 'How many grains do you think will be necessary for you?' I said, 'I don't know; it is up to you.' He said, 'How much stuff were you getting up in Weehawken?' I said, 'I used to buy it up there by the deck.' He said, 'What you get now is going to be the pure drug from the drug store, and it is going to be pretty strong, but nevertheless,' he said, 'I would like to know how much you want.' I said, 'Give me 25 grains; I think that will do me for a day or so.' He then sat down and wrote out a prescription for 25 grains; and I said, 'Now doctor, I am out of work; I would like to know how much you are going to charge me.' He said, 'I will charge you the same as the rest; I will charge you $1.' I said, 'Why, the fellows are telling me I could get a scrip for 50 cents.' He said, 'Why didn't you tell me that in the beginning: I will give you a ten-grain scrip for 50 cents, but over that I must charge you accordingly, and for 25 it will cost you a dollar.' So I said, 'All right, I will take it.' And I paid Leopold Harris, the defendant, the dollar. I took the prescription and I said, 'I am out of work now, but I expect a job in a day or two, and I don't like to lose any time in coming here. What time can I come here and get the scrip?' He said, 'You won't lose any time; can you get me any new customers?' I said, 'Yes, where I am living, there are one

or two fellows, I think, I can bring around.' He said, 'If you bring them around, this man here,' pointing to his nephew, 'will give you a scrip when you come here.' I said, 'Where I am living in Thirtieth street, they have been telling me I can get a scrip around Thirty-Ninth street or in that neighborhood; I can get it filled up there. He said to me, 'Young man, while you are under my treatment, you go to one place; you go to Freilich's drug store and no place else to get the prescription filled, and go around and give them this prescription, and tell them you are a new customer; that I sent you.'"

The government called as a witness the physician to the House of Detention of the City of New York and also to the New York City Prison, known as the Tombs. During the six years he had been physician at the Tombs he had treated approximately 12,000 drug addicts, and he had made a special study of drug addiction, and had written much on the subject. In the course of his testimony he said:

"A person can be cut off the use of cocaine at once, without any reduction at all. It is not necessary to reduce cocaine. I have never reduced cocaine addicts; I always take them immediately off the drug; never had any fatalities or trouble; just gave them a sleeping powder and a tonic mixture to build them up. In the treatment of drug addicts medication is necessary, besides prescribing the drug; pure reduction, reducing the amount of the drug, is not sufficient. They must be built up. That person may have a weakened constitution to begin with; you must build up this person, and you must also see that he has frequent evacuations of the bowels. To give 30 or 40 grains of heroin a day to a patient is an absolute unnecessity; that is absolutely wrong. I have never in all my cases given more than 2 grains of morphine a day to any drug addict; I have not had a single death in the treatment of 12,000 cases. * * * It is a recognized method with practitioners to have some certain definite sign of the presence of drug addiction before giving a prescription. If an addict said he had been using 20 or 30 or 40 grains a day, that would make no difference with me; it all would depend on his physical condition, the condition of his heart and lungs, and if he had any organic trouble. Of course, if I have a patient suffering from locomotor ataxia, or cancer, or tuberculosis in advanced stages, and that person has been taking drugs, I do not reduce such a patient. I believe it is no more than right to give it to them, and, even in those cases, 2 grains a day is enough."

The druggist Freilich, indicted with Harris, and whose drug store was in the neighborhood of the latter's office, testified to going to the office of Harris and inquiring of him why he sent his patients to different druggists. Two days later Harris came to the drug store, and told him that the reason he sent his patients to a different druggist was that he received a commission for doing it, and that if Freilich was willing to do the same thing he would send the patients to him. Harris asked him whether he would pay him a cent on each grain of heroin and morphine. To this Freilich assented, and it was agreed that Harris would send his patients to him. Thereafter Harris was in the habit of calling every week at the drug store for his commissions. Sometimes Harris went over the books and figured up his commission, and sometimes it was done by Freilich. The largest amount Freilich remembered paying Harris in a single week amounted to about $90. He was always paid in cash. The arrangement for the payment of a commission to Harris applied to narcotics only. Freilich sold on the average about 4 or 5 ounces of narcotics a day, and there are 437½ grains in an ounce. The testimony showed that during the months of Feb-

ruary, March, and the first 8 days of April, 1919, defendant wrote 7,940 prescriptions for narcotic drugs. His prescriptions ran from a comparatively small number of grains to 165 grains for 8 days' supply. When he made reductions, they were sometimes as small as $1/24$th of a grain. In one case there was a reduction from 30 grains a day to 29 grains, after 2 months of prescribing. In another case of an addict a prescription for 55 grains of morphine and 30 grains of heroin were given at the same time.

The sufficiency of the indictment has not been called in question, either in the court below or in this court. Such questions as are presented relate to the charge to the jury, and to certain evidence which it is claimed was improperly received. At the conclusion of the charge to the jury the defendant's counsel said:

"I take exception to that portion of your honor's charge in which you describe the circumstances under which a physician might prescribe in the course of his practice. I take an exception to that portion in which you say there is some corroboration of the witness Freilich."

There were no other exceptions taken to the charge. There are eight assignments of error respecting the court's charge to the jury concerning the prescribing of the drug.

[1, 2] An exception ought to be specific and explicit, and show what ruling is claimed to be error. Counsel owe it to the court to be specific in their objections. In this case the objection was specific, in that it stated that it was taken "to that portion" of the charge which described the circumstances under which a physician might prescribe in the course of his practice; but it was general, in that it did not state in what the error consisted, whether it related to something omitted which should have been included, or to something included which should have been omitted. In the light of the subsequent assignments of error, it appears that the exception made was intended to cover not less than eight distinct propositions, which the court laid down and which it is now asserted erroneously laid down. How can it be assumed that the general language of the objection could have informed the judge wherein he had fallen into error? The general language of the single exception was quite insufficient to raise the eight objections assigned for error, and they therefore present nothing which this court can review. A defendant is not entitled to a reversal upon so vague an exception as that under consideration, unless the court sees that the instructions were grossly and manifestly inadequate and unfair. And this the instructions complained of certainly were not.

[3] The only other exception to the charge is that already mentioned, in which counsel said that he excepted to that portion in which the court told the jury that there was some corroboration of the witness Freilich. When that exception was taken the court said:

"Of course, gentlemen, as I said to you, you are the judges of the facts. I did not mean to express any opinion as to the truth or want of truth of any fact, but was only using them by way of illustration to apply the law to the case, and not to have you follow me as to any expression of opinions as to facts, because the jury is the exclusive judge of the fact."

If error was committed in the respect mentioned, it was clearly corrected by the explanation which followed, and defendant could not possibly have been prejudiced thereby.

[4] It is claimed that, inasmuch as defendant was acquitted on the conspiracy count, the fact that he was not guilty on that count established that he could not have been guilty on any count of the indictment. But this is to lose sight of the fact that a conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. It is also to lose sight of the fact that the counts on which defendant was found guilty are not based on a conspiracy, but on the charge that he unlawfully, knowingly, and willfully aided and abetted Freilich to sell, dispense, distribute, and give the drug to the parties named in the counts and against the peace of the United States and contrary to the form of the statute. A physician who issues a prescription which is illegal under the act because not issued in the attempted cure of the habit, knowing it is to be filled by a druggist who knows of its illegality, aids and abets the druggist in violating the act and in so doing commits the substantive crime. Doremus v. United States (C. C. A.) 262 Fed. 849.

[5] Criminal Code, § 332 (Comp. St. § 10506), makes one a principal who at the common law would have been an accessory before the fact. Such an accessory may be charged as having done the act himself, and be indicted and punished accordingly. And in such cases it is not necessary to set out the facts by which he aided and abetted or advised and procured the commission of the crime. In Louie v. United States, 218 Fed. 36, 134 C. C. A. 58, the defendant had been acquitted on a previous trial of conspiracy to import, conceal, buy, sell, etc., smoking opium. He was then reindicted for the substantive crime of aiding and abetting his former alleged co-conspirator in doing the very act, which was the overt act alleged in the conspiracy indictment, and was convicted. It was held by the Circuit Court of Appeals for the Ninth Circuit that a plea of former acquittal could not be sustained. The Circuit Court of Appeals in the Sixth Circuit in Kelly v. United States, 258 Fed. 393, 169 C. C. A. 408, held that an indictment for conspiracy to defraud and one for the offense which was the object of the alleged conspiracy are for different offenses and that a verdict of acquittal under the conspiracy indictment is not inconsistent with a verdict of guilty under the other, although the overt acts charged in the former are some of the acts relied on under the latter. In the above case the subject was elaborately considered and satisfactorily determined. This court announced the principle in Di Preta v. United States (C. C. A. N. Y.) 270 Fed. 73, 75. And see, also, Carter v. McClaughry, 183 U. S. 365, 394, 22 Sup. Ct. 181, 46 L. Ed. 236.

[6] It is said that the evidence was not confined within proper limits, and that the evidence so received injured the defendant before the jury. The defendant assumes that under the substantive counts of the indictment no evidence could be received except in proof of the particular sales alleged. It is conceded that the general rule is that evidence tending to show the commission by the accused of another independent crime, even of the same kind as that for which the accused is

on trial, is inadmissible. Alexander v. United States, 138 U. S. 353, 356, 11 Sup. Ct. 350, 34 L. Ed. 954. The rule, however, is not without its exceptions.

The instances are many in which evidence of the commission of other offenses is necessarily admissible. In Parker v. United States, 203 Fed. 950, 952, 122 C. C. A. 252, this court held that where evidence as to other offenses is clearly interwoven with the case on trial it is admissible. In Farmer v. United States, 223 Fed. 903, 139 C. C. A. 341, which was an indictment for misuse of the mails in furtherance of a scheme to defraud in violation of section 215 of the Criminal Code (Comp. St. § 10385), we held that instances of frauds of exactly the same sort as charged, committed prior to the taking effect of the Criminal Code, were admissible to show intent. The opinion was written by Judge Lacombe, who pointed out that the opinion of this court in Marshall v. United States, 197 Fed. 511, 117 C. C. A. 65, was sui generis, and that there was nothing in it to support a contrary contention. And we understand the rule to be that, if intent or motive be one of the elements of the crime charged, evidence of other like conduct by the defendant at or near the time charged is admissible. Allis v. United States, 155 U. S. 117, 15 Sup. Ct. 36, 39 L. Ed. 91; Schultz v. United States, 200 Fed. 234, 237, 118 C. C. A. 420; Prettyman v. United States, 180 Fed. 30, 36, 103 C. C. A. 384; Walsh v. United States, 174 Fed. 615, 98 C. C. A. 461; Ex parte Glaser, 176 Fed. 702, 100 C. C. A. 254; Brown v. United States, 142 Fed. 1, 73 C. C. A. 187.

[7] Great stress was placed at the argument upon the decision of this court in Hart v. United States, 240 Fed. 911, 153 C. C. A. 597. That was a case in which the defendants were convicted of using the mails in furtherance of a scheme to defraud. The indictment contained a conspiracy count upon which all the defendants were acquitted, and certain other counts charging substantive offenses upon which a conviction was obtained. The judgments were reversed. The overt acts stated in the conspiracy count were to a considerable extent covered by the substantive counts. In the course of the opinion it was said:

"Thus the action of the jury in acquitting the defendants of the conspiracy charge has (under the circumstances of this case) laid a heavy burden on the prosecution to uphold the conviction for substantive offenses. The verdict of not guilty of conspiracy left for the jury's inevitable consideration a mass of testimony immaterial to the issues, passed upon adversely to these plaintiffs in error and their codefendants, yet extremely prejudicial to them. The possibility of this illogical and injurious result inevitably flows from the settled habit of prosecutors (in this circuit at least) of hitching on a conspiracy charge to a substantive count. We do not, of course, impugn the legality of the practice. Usually the same evidence proves the conspiracy and the substance; sometimes the substance is never reached, the criminal effort does not get so far, and conspiracy alone is proved; but to acquit of conspiracy, and convict of substance, produces a condition requiring a scanning of the record to ascertain whether, under cover of the unsuccessful charge, the successful one (over due objection) has been bolstered up."

The reversal in that case was due to errors in the charge to the jury, to prejudicial statements made by the trial judge in the presence of the jury, and because a mass of testimony which was admitted under the

conspiracy count, and which was extremely prejudicial to the defendants, was considered by the jury in connection with the substantive counts, although wholly unrelated to them.

The case under consideration now, it may be admitted, is one which justifies a scanning of the record to ascertain whether, under cover of the unsuccessful charge of conspiracy the successful charge of the substantive offenses (over due objection) has been bolstered up. The record in this case will be searched in vain, however, to find testimony which, having been introduced to prove the conspiracy count and while immaterial to the issues involved under the substantive counts, was yet used to sustain them. It appears, moreover, that defendant did not object to the reception of any of the evidence; that he did not seek to limit any of it to any particular count; that there was no offer under the conspiracy count of any of the evidence now objected to, and no direction of the court that any of it should be so received.

Judgment affirmed.