## BONELLE v. UNITED STATES.
### No. 4489.

Circuit Court of Appeals, Seventh Circuit.
Oct. 28, 1931.

Rehearing Denied Dec. 29, 1931.

Harold J. Bandy, of Granite City, Ill., for appellant.

Walter M. Provine, U. S. Atty., of Springfield, Ill., Frank K. Lemon, U. S. Atty., of Clinton, Ill., and Marks Alexander, Asst. U. S. Atty., of Springfield, Ill.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

The errors relied upon are: (1) Permitting the cross-examination of appellant concerning the amount of property owned by her; (2) denying appellant's request for a directed verdict of not guilty; (3) overruling appellant's motion for a new trial; (4) admitting the testimony of witnesses concerning an alleged conversation with appellant on March 7, 1929.

On May 29, 1929, Government Agents Durbin and Marshall, while riding in an automobile in Collinsville, Ill., passed on a corner lot, No. 317 North Center street, what appeared to be a residence. Detecting the odor of fermenting mash, they stopped their car, and Durbin, going upon the adjoining premises on the south, observed through the basement window of the corner house a still and vat and electric pumps. He went to the rear of this house and there met Marshall, who had come around the north side of the house. They entered the rear door and found Mangono sitting on a chair near the door; and found two stills in operation as a unit, one of 400-gallon capacity and one of 250-gallon capacity. They arrested Mangono, searched the house, and found a nine-foot column, one empty vat, and four full vats containing approximately 30,000 gallons of

fermenting mash. They also found 7 5-gallon cans of alcohol, 121 empty 5-gallon cans, a quantity of kegs, and a Meyers hand pump. Most of the illicit property referred to was found in the basement, and all of it was seized and destroyed. Further search of the house revealed that only three rooms were furnished; the furniture being all new and heavily covered with dust. No cooking utensils, dishes or foodstuffs, or clothing of any kind were present; and there was no appearance of occupancy, except by Mangono as above stated.

Mangono told the agents that he lived in St. Louis and had been working at this house only a short time. Before going to jail with the agents, Mangono took off his working clothes and left them in the basement, and put on a blue suit which was hanging on the basement wall near the still.

Appellant, Bonelle, resided just across the street north from the property which was raided. After the arrest of Mangono, the agents went to her home and talked with her. She stated to them that she owned the residence and lot where the stills were found, and that she had leased them in February to one Joe Paslo for $30 a month, but that the lease was in the bank and she was unable to show it to the agents. She later came from her residence across the street to the house where agent Marshall was destroying the still, and asked him if he had a warrant.

On the trial of this cause, the court, over the objection of appellant, permitted Mr. Simonson, a government agent, to testify substantially as follows: "I had a conversation with appellant Bonelle on March 7th, 1929, in the street at 317 North Center street, Collinsville, Illinois, relative to that property. About 10:30 on that night agent Cornet and I visited this property and noticed that there had been heavy traffic—tracks of cars leading under this house; they led through some broad doors—looked like garage doors—and I saw a man peeping around the corner. Appellant then appeared on the scene and said, 'What is the matter? What are you doing here?' Then, directing her remarks to the man who was peeping around the corner, she said, 'Go on back.' She then said to me, 'This man, he got no sense. I know who you are; if you want the still you come in the day time; if you come at night you want pay.' She wanted to pay us off at that time. She stated that this man worked for her—that he ran the still she had in that house. I asked her how much capacity the still was, and she said about fifteen or twenty gallons. She

begged us not to take the distillery. She said she would pay us to leave it and then come back the first of each month, and call there for five or six months, and then come and get the distillery. She offered $250, and then finally said, 'Me give six or seven hundred dollars.' She said she would pay it that night and then pay the first of each month. * * * (Later) She told us that she wanted us to come to her house and fix it up that night. I told her we would like to see the still, and she said, 'No,' she would pay what we asked, and that it wasn't necessary to see the still."

Most of this conversation was corroborated by agent Cornet, over the objection of appellant, and the questions were properly reserved by motions to strike the testimony of each from the record.

Appellant testified at the trial that she rented the house at No. 317 to Joe Mangono on February 1 for $30 a month, and that she had never lived in the house and knew nothing about the still.

There was no error in admitting the evidence of Simonson and Cornet. It was competent for the purpose of proving, not only ownership, but also guilty knowledge on the part of appellant of the kind of business that was being conducted. In the absence of other evidence to the contrary, the jury had a right to believe from the evidence introduced that the same business was being conducted, and under the same arrangements, on May 29, 1929, as had been conducted on March 7, 1929, and that the ownership continued the same.

■ The objection that the evidence offered tends to prove appellant guilty of a different crime from that with which she is charged is not a valid one, if the evidence offered tends to prove her guilty of the crime charged. Schultz v. United States (C. C. A.) 200 F. 234; People v. Viskniskki, 255 Ill. 384, 99 N. E. 621; People v. Looney, 324 Ill. 375, 155 N. E. 363. Evidence of other similar offenses is competent to show guilty knowledge, notice, or intent. People v. Viskniskki, supra.

■ The fact that the court permitted the government attorney to cross-examine appellant as to the amount of property owned by her and income tax paid by her is a matter of which appellant is in no position to complain. In her direct examination she testified that she was a widow with five children, and that she supported her family by washing, ironing, and dressmaking. This opened the door for the cross-examination that ensued, and the court did not abuse its discretion in permitting it.

■ Appellant insists that she was prevented from having a fair and impartial trial by misconduct of government's attorney, while cross-examining her, in addressing to the court the following language: "Now, your Honor, here is a defendant on the witness stand and she testifies that she does not know. She has lived in that city sixteen years and doesn't know the streets. And we have some information here that she owned this property, and she says she does not know."

When this statement was made, appellant objected to it, and asked that the jury be instructed to disregard it. The court immediately—and very properly—complied with the request, and so instructed the jury. Having received from the court everything that she asked relative to this matter, she is in no position to complain.

■ There was no inconsistency in the jury's verdict in finding appellant guilty on count 4 and not guilty on the other counts. Seiden v. United States (C. C. A.) 16 F.(2d) 197; Gozner v. United States (C. C. A.) 9 F.(2d) 603; Dallas v. United States (C. C. A.) 4 F. (2d) 201.

■ A perusal of the record convinces us that the evidence amply supports the verdict, and there was no prejudicial error.

Judgment affirmed.